HEWITT, Respondent, vs. THE JOHN WEEK LUMBER COMPANY, Appellant.

*September 26 — October 14, 1890.*

(1) *Interest: Unliquidated counterclaim.* (2, 3) *Custom: Logs and lumber: Evidence: Contract: Damages.*

1. Though upon a liquidated claim interest is recovered from the time when the cause of action accrued, upon an unliquidated counterclaim thereto, accruing at the same time, interest is recoverable only from the date of service of the answer.

2. A custom of the mill-owners on the Wisconsin river to retain the slabs from logs sawed by them is a general custom, which may be proved without having been pleaded.

3. In an action to recover damages for a failure to furnish the agreed quantity of logs under a contract for sawing, the mill-owner may recover (in addition to the difference between the contract price for the sawing and the actual cost of doing the work) the value of the slabs to which, by a general custom, he would have been entitled.

APPEAL from the Circuit Court for *Portage* County.

Action by *Henry Hewitt, Jr.*, as surviving partner of the firm of Daniels & Hewitt, to recover a balance of the purchase price of logs sold and delivered to the defendant. The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action is brought here by the appellant without settling any bill of exceptions, and the record returned contains only the pleadings, the special verdict of the jury, and the judgment of the court upon such verdict.

The case is brought here by the defendant, upon two questions: *First.* It is claimed that the defendant should have been allowed interest upon the amount of damages recovered by it from the time of the breach of the contract by the plaintiff, whereas the court only allowed interest from the day of the filing of the counterclaim. *Second.* It is claimed that the court erred in not allowing, as a part of

its damages, the value of the slabs from the logs of the plaintiff which the plaintiff should have furnished under his contract, and which the defendant had agreed to saw for him.

The rights of the appellant to be adjudicated upon this appeal arise upon the counterclaim of the defendant, set up in its answer, in which it claims that the plaintiff had failed on his part to perform the contract set up in such counterclaim. The following is a copy of the contract as set up in the appellant's counterclaim:

"Memoranda of agreement made and concluded this 10th day of September, A. D. 1886, by and between the *John Week Lumber Company*, of the city of Stevens Point, Wisconsin, party of the first part, and Hewitt & Daniels, of Hutchinson, Wis., parties of the second part:

"Witnesseth, that the said party of the first part, for the consideration hereinafter mentioned, agree to manufacture into lumber or shingles, in a good and workmanlike manner, certain lot of pine saw-logs now in the Stevens Point Boom Company's boom and owned by said second parties, consisting of eight hundred thousand feet (800,000), more or less, marked on the end H. D., and on the side H.; also one hundred and fifty thousand feet (150,000), more or less, marked on the end D. D., and on the side X. Said logs are to be manufactured into lumber or shingles as said second party or their agent may direct, and as fast as they are delivered into their mill-boom, and piled in their lumber-yard in such manner as such second parties may direct, and shall be assorted, if so desired, into three grades, as near as may be,— into select and better, common, and culls. Said logs or timber that may be manufactured into shingles shall be assorted and packed into three grades, known as 'star A star,' 'shaded A,' and 'number one,' or 'culls,' in the usual and customary manner, and piled in said first parties' lumber-yard. All lumber and shingles to be covered or roofed

with second parties' lumber. Said first parties agree to manufacture said logs into lumber on their band and circular saw-mills, each mill to be run to its fullest capacity as near as may be. It is mutually agreed and expressly understood that all the said lumber shall be manufactured into thickness of one and one fourth ($1\frac{1}{4}$), one and one half ($1\frac{1}{2}$), and two inch (2) or thicker, as second parties may direct. Said second parties agree to deliver all of said logs into said first parties' mill-boom during the sawing season of 1886, in lots of two hundred thousand (200,000) feet or more at each delivery.

"Said second parties further agree to pay said first parties for the manufacturing, assorting, piling, and covering of the lumber, in the manner aforesaid, the sum of two dollars and seventy-five cents ($2.75) for each and every thousand feet so manufactured, and for the manufacturing and assorting, packing, piling, and covering of the shingles, in the manner aforesaid, the sum of eighty-five (85) cents per thousand for star Λ star; sixty-five cents (65) per thousand for shaded A; and forty cents (40) per thousand for number ones, or culls. Payments to be made as follows: One half of the above agreed price at the end of each month, as fast as said lumber and shingles are put in the pile, and the balance on the 15th day of December, 1886. It is mutually agreed that said lumber shall be estimated in the pile by A. G. Hamacker, of Stevens Point, Wis., whose estimates shall be final in determining the number of thousand feet of lumber and the number of thousand of shingles, one half of the expense of such estimate to be paid by each of the parties hereto."

The defendant, in its answer, sets up a counterclaim under this contract, and alleges a breach of the same on the part of the plaintiff by refusal to furnish and deliver 550,000 feet of logs agreed to be furnished by the plaintiff under such contract, and alleges that the actual cost to the defendant

to manufacture such logs into lumber, as required by the contract, would not exceed seventy-five cents per thousand feet; and then alleges that it has been damaged, by reason of such refusal on the part of the plaintiff to furnish such logs, in the sum of $1,000, with interest thereon from the 15th of December, 1886, and demands judgment for that sum.

Upon this counterclaim the jury found a special verdict as follows: "(11) Did the defendant, in 1886, agree in writing with said Daniels & Hewitt to manufacture into lumber 950,000 feet of saw-logs belonging to said Daniels & Hewitt, and did it manufacture into lumber any part of said logs? Answer. Yes. (12) What amount, if any, is due and unpaid from plaintiff to defendant for manufacturing such logs into lumber and shingles? A. $811.70. (13) Was the lumber so manufactured by defendant sawed and piled in a good and workmanlike manner? A. Yes. (14) If you say 'No' in answer to the last question, then was the plaintiff damaged thereby, and, if so, how much? A. ——. (15) Did the said Daniels & Hewitt fail to de_liver any part of said logs contracted to be sawed, as before stated, into the mill-boom of defendant's mill? A. Yes. (16) How many feet of logs did they fail to deliver? A. 525 M. '(17) What amount would it have cost the defendant, per thousand feet, to saw and pile the logs not delivered in the manner provided in the aforesaid written agreement, without taking into account the value of the slabs? A. $1.10. (18) What was the value per thousand feet of logs, to defendant, of the slabs obtained by it in the manufacture of logs into lumber in the fall of 1886? A. Forty-one cents. (19) Was there a general custom in the saw-mills on the Wisconsin river, on September 29, 1886, and for many years prior thereto, that the manufacturer kept the slabs made therefrom, unless otherwise specially agreed upon? A. Yes."

Upon this verdict in favor of the appellant, the circuit court entered the following judgment, after rendering judgment in favor of plaintiff for the amount found due to him, viz.: "(2) That said defendant be credited, and allowed to set off against the above amount, the sum of $811.70, the amount found by said jury to be due from plaintiff to defendant for manufacturing lumber, including interest to the date of trial. (3) That said defendant be credited and allowed to set off against the aforesaid sum credited to the plaintiff the further sum of $924, as damages for the failure to deliver to the defendant 525,000 feet of saw-logs to manufacture, as provided in the written agreement referred to in the defendant's answer, whereby said defendant lost in profits the difference between the contract price for sawing and piling such logs, which was $2.75 per thousand, and the amount which it would have cost defendant to have sawed and piled the same, which was $1.10 per thousand, as found by said jury, said difference being $1.65 per thousand for said 525,000 feet of logs, and amounting to the sum of $866.25, in the aggregate, which amount, with interest thereon from the time the answer was served in said action,— to wit, March 20, 1889,— at the rate of seven per centum, up to the date of trial, would amount to the aforesaid sum of $924, the said amount to be credited as of the date of trial. It is therefore ordered that, after deducting the aforesaid sums from the amount so credited to the plaintiff as aforesaid, the said plaintiff have judgment herein against the defendant for the balance, to wit, for the sum of $635.52 damages, together with the costs of this action to be taxed; and the clerk of said court is hereby authorized and directed to enter judgment accordingly. Dated March 1, 1890. By the court, Chas. M. Webb, Judge."

To this judgment the defendant entered the following exceptions: "Defendant excepts to so much of said order as denies defendant interest upon its damages for breach of

contract, as found by the jury in their answer to the 15th, 16th, 17th, and 18th questions in their special verdict, from the date of the breach of said contract, and not from the date of the service of the answer, for the reason that interest was allowed plaintiff on his damages, and interest should have been allowed to defendant in offset to same. Defendant also excepts to that part of said order fixing the amount of defendant's damages for the breach of contract at $924; and the defendant insists that, by the finding of the jury, it is entitled to recover, in addition to said sum of $924, the sum of forty-one cents per thousand feet of logs for the slabs made therefrom, to wit, the sum of $215.25."

For the appellant there was a brief by *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones*.

For the respondent there was a brief by *Miller & McCormick*, attorneys, and *John Barnes*, of counsel, and oral argument by *Mr. Barnes*. They contended, *inter alia*, that the custom relied upon by appellant, being confined to the mill-owners on one river, is a local custom and should have been pleaded. *Templeman v. Biddle*, 1 Har. (Del.), 522; *Wallace v. Morgan*, 23 Ind. 399; *Governor v. Withers*, 5 Grat. 24, 50 Am. Dec. 95; *Gano v. Palo Pinto Co.* 71 Tex. 99; *Lindley v. First Nat. Bank*, 76 Iowa, 629; *Girard L. Ins. Co. v. Mutual L. Ins. Co.* 13 Phila. 90. A local custom is not binding upon parties to a written contract, unless the contract itself refers to it. *Eager v. Atlas Ins. Co.* 14 Pick. 141. A mere finding that such a custom existed is not sufficient. It was necessary for the jury to find that it was known to respondent and that the parties contracted with reference to it. 2 Pars. Cont. (5th ed.), 541; *Power v. Kane*, 5 Wis. 265; *Lamb v. Klaus*, 30 id. 94; *Scott v. Whitney*, 41 id. 504; *Paine v. Howells*, 90 N. Y. 660; *Higgins v. Moore*, 34 id. 425; *Bradley v. Wheeler*, 44 id. 500; *Herman v. Niagara F. Ins. Co.* 100 id. 411; *Walls v. Bailey*, 49 id. 464.

TAYLOR, J. The exception taken by the defendant that the court erred in not allowing him interest on his damages from the time fixed for the performance of this contract by the plaintiff, according to the terms of the contract, or, in lieu thereof, applying the amount of his damages to the extinguishment of so much of the plaintiff's claim against the defendant as of the date of his claim, we do not think is well taken. The plaintiff's claim for damages arose out of a contract separate and distinct from the contract upon which the defendant seeks to recover. It is said it is unjust to permit the plaintiff to lay by for years upon his claim, and then be permitted to recover interest upon his damages from the time the same accrued until the judgment, and at the same time refuse to permit the defendant to recover interest on his damages which accrued at the same time plaintiff's accrued; but the difficulty with the defendant's claim is that the nature of his damages were such as were not ascertained and could not be ascertained with certainty until the verdict of the jury in the case, while the plaintiff's damages were ascertainable and susceptible of liquidation without the intervention of a court or jury.

The fact that defendant's claim is ascertained by way of counterclaim in an action against him by the plaintiff cannot change the rule as to allowing interest. A counterclaim is an action by the defendant against the plaintiff, and his rights are to be determined as though he was pursuing the plaintiff in a separate and independent action. It would hardly be claimed that, if this action had been entirely disconnected with the action of the plaintiff against the defendant, the defendant would have been entitled to recover more interest than he recovered by the judgment in this case. It is not a case similar to the case referred to (*McMahon v. N. Y. & E. R. Co.* 20 N. Y. 463), where the court held that the plaintiff ought to recover interest on an unliquidated claim, because the defendant had himself pre-

vented the plaintiff from liquidating the same by not causing certain measurements to be made which he had agreed to make, and which when made would have liquidated and ascertained the amount of the plaintiff's claim. In this case the defendant could have caused his claim to be liquidated by bringing an action at any time after his cause of action arose; and, under the rule adopted in this case by the trial court, he would then have been entitled to recover interest from the commencement of his action. His delay in bringing his action cannot be charged to the account of the plaintiff. Under the rule laid down by this court in *Marsh v. Fraser*, 37 Wis. 149; *Tucker v. Grover*, 60 Wis. 240; *Yates v. Shepardson*, 39 Wis. 173; *Shipman v. State*, 44 Wis. 458; *Tyson v. Milwaukee*, 50 Wis. 90,— the defendant was allowed all the interest he was entitled to.

The objection made by the defendant that the court erred in not allowing him forty-one cents per thousand as an item and part of his damages arising out of the refusal of the plaintiff to perform the contract on his part, is, we think, well taken. The jury expressly found that it " was a general custom in the saw-mills on the Wisconsin river, on September 29, 1886, and for many years prior thereto, that the manufacturer kept the slabs made therefrom (that is, from the logs manufactured), unless otherwise specially agreed upon;" and they also found the value of such slabs to the defendant under this contract to be the sum of forty-one cents per thousand. These findings must, in the absence of any bill of exceptions in the case, be held to have been supported by the evidence.

It is urged on the part of the plaintiff that, because the counterclaim of the defendant did not set out such custom, he should not have been permitted to prove the same on the trial; and if the court on the trial admitted such proofs, he might, after the verdict was taken, reject the finding, because founded upon evidence improperly admitted. In the

absence of anything in the record showing the contrary, we think this court must hold that this evidence of custom was properly admitted, or, at all events, admitted without objection on the part of the plaintiff, and so properly submitted to the jury. But, in addition to this, the custom found by the jury is a general custom, within the meaning of the law, and therefore may be proved without alleging it. The custom was, we think, a proper and lawful custom and one which would be likely to be adopted by parties dealing in the furnishing of logs by one party and the manufacture of them by another party, for the reason that the slabs would be of considerable value to the mill-owner, and of little or no value to the man furnishing the logs, if required to remove them from the mill. It certainly is not an unlawful custom.

Now the object of proving a general custom is not to contradict or change the contract made between the parties, but to interpret it to the court and jury as it was understood by the parties at the time it was made; and this evidence of a general custom, when it does not contradict or change the express terms of the written contract, is admitted for the purpose of showing what the real contract between the parties was. The proof of such custom is always admitted without pleading it. *Power v. Kane*, 5 Wis. 265, 268; *Hall v. Storrs*, 7 Wis. 253; *Lamb v. Klaus*, 30 Wis. 96; *Lee v. Merrick*, 8 Wis. 229; *Marshall v. Am. Exp. Co.* 7 Wis. 1; *Keogh v. Daniell*, 12 Wis. 163; *Huebschmann v. McHenry*, 29 Wis. 655; *Hinton v. Locke*, 5 Hill, 437; *Scott v. Whitney*, 41 Wis. 504, 507. And, when it is clearly proven, the parties are supposed to have contracted with reference to such custom, unless such custom changes the express terms of the written contract. See cases cited above. Under the findings of the special verdict, the forty-one cents per thousand, the value of the slabs, was as much a part of the defendant's damages as was the difference be-

tween the contract price for the sawing and the actual cost of performing the work, and should have been allowed by the court and deducted from the sum found due to the plaintiff.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to enter. judgment upon the special verdict in accordance with this opinion.

