John O'Brien Lumber Company, Respondent, vs. Wilkinson and another, Appellants.

*November 15—December 13, 1904.*

*Pleading: Amendment: Abuse of discretion: Custom: Local and general usage: Judicial notice: Presumptions: Evidence: Examination of witnesses: Res adjudicata: Demurrer ore tenus: Chattel mortgages: Appeal and error.*

1. Under the facts stated in the opinion, it is *held* that it was not an abuse of discretion to refuse to allow a counterclaim to be amended so as to allege a local custom.

2. Particular usages and customs of trade or business must be known by the party to be affected by them, or they will not be binding, unless they are so notorious, universal, and well established that his knowledge of them will be conclusively presumed.

3. A general usage and custom need not be pleaded, since courts take judicial notice thereof, and such general usage and custom is presumed to have entered into a contract affected by it and to bind the parties.

4. Evidence of a general usage and custom is allowed, not only to explain, but also to add tacitly implied incidents to the contract actually made in addition to those which are actually expressed. It has, however, very remote, if any, bearing in establishing a different contract, which, if made, through mistake was never reduced to writing.

5. Where a witness has testified that he did not know whether W., one of defendants, knew he had a certain contract or not, it is not error to exclude a question as to whether witness had any reason to believe that one G. had spoken to W. about that contract. Such testimony is at most conjectural

6. It is not error to sustain a demurrer *ore tenus* to a counterclaim, which had already been held by the supreme court to state no cause of action in favor of defendants and against the plaintiff.

7. Where a mortgagee of chattels has taken possession after default, the mortgagor has no longer any legal title to the property. He cannot maintain replevin therefor, nor, without proof of payment or other extinguishment of the debt, can he maintain an action against the mortgagee for conversion. His only remedy is by a bill in equity to redeem.

8. Even if a sale of mortgaged chattels be not made in strict conformity with the requirements of sec. 2316a, Stats. 1898 (providing that no such sale shall be made before five days from the actual taking, etc., and if made without consent of the mortgagor, that "the mortgage debt shall be deemed paid and the mortgage securing the same be deemed cancelled"), such sale does not operate as a cancellation of the mortgage debt in the sense that the mortgagor is entitled to recover the property, or its value, without regard to the amount remaining due on the mortgage.

9. Defendants counterclaimed for the balance due on the sale and delivery of a locomotive, which the undisputed evidence showed had been mortgaged to plaintiff to secure the repayment of certain advances made to defendants on a logging contract. The locomotive was thereafter sold by the mortgagee at public sale to a third person for less than the debt. The debt for which the mortgage was given had not been paid. *Held,* that it was not error to refuse an amendment to the counterclaim alleging that plaintiff had appropriated and converted the proceeds to its own use.

10. Error cannot be assigned to the admission of testimony which was afterwards stricken out and the jury instructed to disregard.

11. Evidence being admissible, when offered, as tending to prove an issue raised by the pleadings, it is not prejudicial error to fail to restrict the consideration of such evidence to that purpose, where no specific objection was made on that ground, nor request to so restrict the consideration thereof.

12. Error in admission of evidence under a claim of offset to a counterclaim, if any, is immaterial, where such claim of offset was withdrawn and the jury found no cause of action existed under the counterclaim.

SIEBECKER, J., dissents.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

This action was commenced June 15, 1901, to recover some $20,000 claimed to be due on two notes, one dated November 18, 1899, for $6,000, and the other June 30, 1900, for $8,701.23, and for a balance on account of $11,442.70. Such claims grew out of four logging contracts between the plaintiff and the defendants, dated, respectively, May 2, 1898, February 6, 1899, December 1, 1899, and August 2, 1900. The original answer admitted, in effect, the claims set forth in the complaint, but sought to reduce the amount by six several counterclaims. By the first counterclaim the defendants claim $16,500 damages by reason of an alleged breach of the contract of May 2, 1898, on the part of the plaintiff, in failing to furnish cars as agreed. By the second counterclaim the defendants claim $19,000 damages by reason of the alleged breach of contract of February 6, 1899, in failing to furnish cars as therein alleged. By the third counterclaim the defendants claim $10,500 damages by reason of the alleged breach of contract of December 1, 1899, in failing to furnish cars as therein alleged. By the fourth counterclaim the defendants claim $5,000 damages by reason of the alleged breach of the contract of August 2, 1900, for failing to furnish cars as therein alleged. By the fifth counterclaim and setoff the defendants claim $706.13 as the balance due for certain work in and about the grading of the railroad bed between Benton and Washburn. By the sixth counterclaim and set-off the defendants claim $3,300 as the balance due on the sale and delivery of a certain locomotive, known as "Lima Engine," to the plaintiff by the defendants, November 21, 1901, of the reasonable value of $3,800, no part of which had been paid except $500. The plaintiff replied to the fourth, fifth, and sixth counterclaims. To each of the first three counterclaims the plaintiff interposed written demurrers. The trial court sustained each of such demurrers to the first, second, and third counterclaims, and entered an order accordingly, September 11, 1902. From that order the de-

fendants appealed to this court, and the same was affirmed, April 17, 1903. 117 Wis. 468–475, 94 N. W. 337. In deciding that case, this court there reached the conclusion that the written contracts, upon their face, by necessary implication, imposed upon the defendants the duty of obtaining the cars upon which they had agreed to load the logs, and therefore failed to support any cause of action in favor of the defendants and against the plaintiff, as alleged in such counterclaims. 117 Wis. 474, 94 N. W. 337.

After the cause was remanded to the trial court, the defendants amended their answer in several particulars. Among other things, the first, second, and third counterclaims were each amended so as to allege, in effect, that, by mutual mistake of the parties in each of said written contracts, the duty of furnishing and supplying cars was imposed upon the defendants instead of the plaintiff, as had been actually agreed between the parties, and the same was put in issue by the replies of the plaintiff. An order to show cause, based upon an affidavit of the defendants' attorney, was made January 18, 1904, and a proposed amendment to each of the first, second, and third counterclaims mentioned, by alleging therein the following:

"That the expression 'to put and load on cars,' as used in the sixth line of the second paragraph of said Exhibit A, and whenever else used in said exhibit and agreement and the other exhibits attached to the complaint and answer, with reference to the logging to be done thereunder, had, at and for a long time prior to the making of such agreement, a well-known, recognized, and established meaning under the general custom of the business in the locality in which such contract was executed, and in the locality and neighborhood in which the same was to be and was carried out; that such recognized and established meaning was well known to each of the parties thereto at the time of entering into said agreement, and such expression was so used by the said party in said agreement in and with such established and recognized meaning. That by such general custom, usage, and interpretation

said expression implied, embraced, and included the furnishing by the owner of the logs, and not by the logger, all cars so to be loaded, and was uniformly used and understood as the equivalent of the expression 'to put and load on cars to be furnished by the owner of the logs.' "

And that the prayer of said answer be amended to read as follows:  ·

"Wherefore these defendants pray that said contracts mentioned in the first, second, and third counterclaims be reformed to express the real intention and agreement of the parties as in said counterclaims set out, if the court shall find that such reformation is necessary for the purpose of expressing such intention and agreement, and that the said defendants have judgment against the plaintiff for the full amounts respectively set forth and claimed in the several counterclaims contained in said answer, and for their costs and disbursements in this action."

Thereupon, and after hearing on February 15, 1904, the court "ordered that the said motions of the defendants be, and the same hereby are, denied, with $10 costs.  It is further ordered that the equitable issues raised by the first three counterclaims contained in the amended answer of the defendants, whereby the defendants seek to reform the three contracts mentioned and described in the said first three counterclaims of said answer, be first tried by the court before the trial of the legal issues in the above-entitled action, and that such equitable issues be tried, as aforesaid, at the term of said court which will be held at the courthouse in the city of Ashland on the 29th day of February, 1904."  March 7, 1904, the venue in the action was changed to Eau Claire county. Such equitable issues were tried April 11, 1904, and the court made written findings, wherein it was found, in effect, that nothing was omitted from or left out of either of said contracts by mistake or otherwise, and that each of such contracts fully expressed the agreement therein sought to be made.

Thereupon, and on May 2, 1904, the case was tried, upon

the complaint, the answers as so amended, and the replies thereto, by the court and a jury. At the close of the trial the jury returned a verdict wherein they found in favor of the plaintiff, and against the defendants, as to the fourth counterclaim, and that the defendants had no cause of action thereon against the plaintiff. And they also returned a verdict wherein they found in favor of the defendants, and against the plaintiff, as to the fifth counterclaim, and assessed the defendants' damages at $968.68. The court withdrew from the jury all consideration of the issues raised by the sixth counterclaim and the reply thereto, and the evidence introduced under such counterclaim, and refused to permit such counterclaim to be amended. From the judgment entered upon such findings and verdict, the defendants bring this appeal.

For the appellants there was a brief by *Tomkins, Tomkins & Garvin,* attorneys, and *F. M. Hoyt* and *T. W. Spence,* of counsel, and a reply brief signed *F. M. Hoyt* and *T. W. Spence,* of counsel, and oral argument by *Mr. Hoyt* and *Mr. Spence.*

For the respondent there was a brief by *Richard Sleight,* attorney, and *Winkler, Flanders, Smith, Bottum & Fawsett,* of counsel, and oral argument by *Mr. Sleight* and *Mr. J. G. Flanders.*

CASSODAY, C. J.   1. The first question calling for consideration is as to whether it was an abuse of discretion for the trial court to refuse to allow the first, second, and third counterclaims, respectively, to be amended, so as to allege that, by the custom in the locality and neighborhood where the contracts were made and to be performed, the expression "to put and load on cars," contained therein, "was uniformly used and understood as the equivalent . . . 'to put and load on cars *to be furnished by the owner of the logs,*' " as mentioned in the foregoing statement. For the purpose of this

appeal we assume that such proposed amendment only embraced a local custom. Such refusal was contained in the order of February 15, 1904, mentioned in such statement. Whether it was an abuse of discretion, of course, depends upon the circumstances. The action was commenced two years and eight months prior to the making of the order so complained of. The original complaint was verified July 19, 1901. The defendants answered, and thereupon the plaintiff served an amended complaint October 14, 1901. The defendants answered such amended complaint November 6, 1901, and therein alleged six several counterclaims. November 29, 1901, the plaintiff replied to such counterclaims. March 10, 1902, the defendants amended their answer to the amended complaint. April 2, 1902, the plaintiff replied to the fourth, fifth, and sixth counterclaims, and April 7, 1902, the plaintiff amended such reply. April 23, 1902, the plaintiff demurred to the first, second, and third counterclaims. September 11, 1902, the trial court sustained such demurrers, and from the order sustaining the same the defendants appealed to this court, where the order was affirmed April 17, 1903. 117 Wis. 468, 475. August 29, 1903, the defendants again amended their answer, setting up an equitable counterclaim to the effect that each of such contracts was by mutual mistake so written as to impose upon the defendants the duty of furnishing and supplying the cars, instead of being so written as to impose such duty upon the plaintiff, as had been actually agreed between the parties, as mentioned in the foregoing statement; and November 10, 1903, an order was entered to the effect that such amended answer stand as the answer of the defendants in the case, and that the plaintiff have twenty days to reply to the same. November 30, 1903, the plaintiff replied to such counterclaims. Under such circumstances, and upon such proposed amendment to the answer alleging such local custom, and upon an affidavit of one of the attorneys, for the defendants, having the principal charge of the action,

wherein it was stated that the facts set forth in such proposed
amendment were first disclosed to him December 22, 1903,
while preparing for trial, and that, while such facts were ap-
parently known to the defendants, yet they were unaware of
their significance and bearing upon the merits of the action,
the court refused to allow such amendment. Thus it appears
that, before attempting to inject into the case the element of
local custom, the defendants had remodeled their answer three
different times, and the last time was several months after
this court had affirmed the order of the trial court holding,
on demurrer, that neither the first, second, nor third counter-
claim stated a cause of action in favor of the defendants and
against the plaintiff. We fail to find in the record any good
excuse for such delay of nine months after such affirmance,
and sixteen months after the entry of the order so affirmed,
before attempting to allege local custom. It is conceded that
the defendants knew of such local custom at the time of the
making of such several contracts. In fact, to be available in
construing such contracts, it was essential that both parties,
at the time of making such contracts, had knowledge of such
local custom. This, when properly pleaded, may be shown
by proof of actual knowledge, or that such custom has been
so general that the parties are presumed to have knowledge
of it. 12 Cyc. 1039, 1040. Thus it is said:

"Particular usages and customs of trade or business must
be known by the party to be affected by them, or they will not
be binding, unless they are so notorious, universal, and well
established that his knowledge of them will be conclusively
presumed." Id. 1041, 1042. See *Power v. Kane,* 5 Wis.
265; *Scott v. Whitney,* 41 Wis. 504; *Hinton v. Coleman,* 45
Wis. 165; *Hewitt v. John Week L. Co.* 77 Wis. 548, 46 N. W.
822; *Brunnell v. Hudson S. M. Co.* 86 Wis. 587, 57 N. W.
364; *Chateaugay O. & Iron Co. v. Blake,* 144 U. S. 476, 12
Sup. Ct. 731.

We must assume, therefore, that the defendants had knowl-
edge of such local custom, if any existed, during all the in-

tervening years after the making of the several contracts, and the attempt to allege it, and yet the case had been pending for more than two years and a half before there was any attempt to allege such local custom. Certainly, the allowance or disallowance of such an amendment was addressed to the sound discretion of the trial court. *Milwaukee & M. R. Co. v. Finney,* 10 Wis. 388; *Studebaker Bros. Mfg. Co. v. Langson,* 89 Wis. 200–203, 61 N. W. 773. We cannot hold that there was an abuse of discretion in refusing to allow such amendment.

2. Error is assigned because, on the trial of the equitable issue made by the reply to the counterclaim alleging mutual mistake in the making of the contracts, the court excluded testimony tending to prove a general and uniform custom for the owner of the logs to furnish the cars. No such custom was alleged in such counterclaims. But "a general usage or custom need not be pleaded." 12 Cyc. 1097. The reason is, courts take judicial notice of such general custom. Id. 1098. *Vogt v. Shienebeck,* 122 Wis. 491, 100 N. W. 820. Such general custom may be presumed to have entered into the contract and bind the parties. *Gehl v. Milwaukee P. Co.* 105 Wis. 573–580, 81 N. W. 666; *S. C.* 116 Wis. 263, 93 N. W. 26. As there said in the opinion of the court in that case, on the first appeal:

"A uniform trade custom is readily accepted by courts to define what is ambiguous or is left indeterminate in a contract, where both parties have knowledge of the custom, or are so situated that such knowledge may be presumed; for the reason that the majority of such transactions are had in view of the custom, and the agreement on which the minds of the parties actually met will thereby be carried into effect. Jones, Construction of Cont. §§ 100, 103. Where the custom is proved to be known to both, it may even add terms to the contract. *Scott v. Whitney,* 41 Wis. 504; *Hewitt v. John Week L. Co.* 77 Wis. 548 [46 N. W. 822]."

So it is said that "evidence of usage is allowed not only to explain, but to add tacitly implied incidents to the contract

in addition to those which are actually expressed." 12 Cyc. 1082—citing numerous cases in support of the proposition, including the one last mentioned, and *Lamb v. Klaus,* 30 Wis. 94. In this last case the plaintiff sought to recover the pur-chase price of shingles sold and delivered to the defendant under a written contract. By way of equitable counterclaim, the defendant sought to reform the written agreement on the ground of mistake in making the same. That issue was first tried and determined against the defendant, and such deter-mination was not presented to this court for review. The an-swer further alleged, and evidence was offered tending to prove by practical construction and general custom and usage, that the defendant was entitled to interest on advances made by him on such written contract; but the court excluded the evidence so offered, and for that reason the judgment was re-versed by this court. *Lamb v. Klaus,* 30 Wis. 94, 95, 102. This court held that, by refusing to reform the written con-tract, the trial court in effect held "that the written contract expressed all that the parties *meant to express therein,"* and that it did "not estop either party from proving a usage which entered into the agreement." In other words, and as indicated in the opinion of Dixon, C. J., in that case, and the other authorities cited, evidence of general custom and usage is admissible to explain and enlarge the meaning of a written contract actually made, but has a very remote, if any, bearing in establishing a different contract, which, if made through mistake was never reduced to writing. Assuming the existence of such general custom and usage, still we are constrained to hold that the findings of the trial court upon the equitable issues, to the effect that nothing was omitted from or left out of either of the three written contracts in question by mistake, are sustained by the evidence. Certainly we cannot hold that such findings are against the clear pre-ponderance of the evidence.

3. Error is assigned because, while attempting to prove on

cross-examination of the plaintiff's president, O'Brien, that at the time of making the first contract with the defendants, May 2, 1898, the defendant *Wilkinson* knew of the contract which the plaintiff had made with the railroad company about two weeks before, and after testifying, without objection, that he did not know whether *Wilkinson* knew he had that contract or not; that he never mentioned it to him, and never knew that any one mentioned it to him, but "presumed that maybe Gifford did"—which words in quotation were stricken out by the court. Gifford had, at the time, charge of the plaintiff's office in Ashland, but had since died. Then, after testifying, without objection, that he did not know what Gifford had done, the court sustained an objection to a question as to whether he had any reason to believe that Gifford spoke to *Wilkinson* about the contract with the railroad company. We perceive no error in such rulings. Such testimony was at most conjectural.

4. Error is assigned because the court sustained the demurrer *ore tenus* to each of the first three counterclaims. These counterclaims and the contracts therein alleged, and upon which they were respectively based, are the same as when this court affirmed the order of the trial court sustaining the demurrers to such counterclaims on the ground that neither of them stated facts sufficient to constitute a cause of action in favor of the defendants and against the plaintiff. 117 Wis. 468–475, 94 N. W. 337. Every question decided by this court on that appeal is *res adjudicata,* and absolutely binding, not only upon the trial court, but also upon this court. *Keystone, L. Co. v. Kolman,* 103 Wis. 300, 303, 79 N. W. 224, and cases there cited; *Hart v. Moulton,* 104 Wis. 349, 353, 80 N. W. 599; *Rupiper v. Calloway,* 105 Wis. 4, 7, 8, 80 N. W. 916; *South Bend C. P. Co. v. George C. Cribb Co.* 105 Wis. 443, 81 N. W. 675; *McCord v. Hill,* 117 Wis. 306, 308, 94 N. W. 65. Since the decision on the former appeal is *res adjudicata,* it is unnecessary to determine whether

that decision would have been different had the reasons here urged been there presented. Since it was there held that neither of the three counterclaims stated facts sufficient to constitute a cause of action in favor of the defendants and against the plaintiff, it is obvious that no evidence under either of those counterclaims was admissible against the objections on behalf of the plaintiff. As indicated in some of the authorities cited on another branch of this case, that included evidence of practical construction and general custom. We must hold that there was no error in sustaining such demurrers *ore tenus*.

5. Error is assigned because the court withdrew from the jury the issues raised by the reply to the sixth counterclaim. That counterclaim was to recover $3,300 as the balance due on the sale and delivery to the plaintiff by the defendants of a locomotive engine, and refusing to permit such counterclaim to be amended upon the trial. It is undisputed that, to secure the repayment of $1,774.34 advanced by the plaintiff for the benefit of the defendants, they gave to the plaintiff a bill of sale for the engine, October 21, 1899, which was in legal effect a chattel mortgage; that, pursuant to notice posted in two places, the engine was sold thereon by the plaintiff to the Edward Hines Lumber Company, November 21, 1901, for less than the amount due on such mortgage. The trial court held that, if the sale was fair, the defendants had no cause of action therefor; and that if such sale was unfair, yet that, as the debt secured by the engine was due, and the plaintiff had taken possession prior to the sale, the legal title passed to the plaintiff, as mortgagee, and the only remedy of the defendants was in equity to redeem. In such ruling the court followed the decision of this court, wherein it was held:

"Where the mortgagee of chattels has taken possession after a default, the mortgagor has no longer any legal title to the property, and cannot maintain replevin therefor. His only remedy is by a bill in equity to redeem." *Holzhausen v.*

*Parkhill,* 85 Wis. 446, 55 N. W. 892. To the same effect, *Klinkert v. Fulton, S. & M. Co.* 113 Wis. 493, 501, 89 N. W. 507, and cases there cited.

Nor can the "mortgagor, without proof of payment or other extinguishment of the mortgage, maintain an action against the mortgagee for a conversion of the property." *Hill v. Merriman,* 72 Wis. 483, 40 N. W. 399. The engine was not sold at private sale, but on public notice, as stated. Assuming that the sale was not made in strict conformity to the statute (sec. 2316a, Stats. 1898), still it did "not operate as a cancellation of the mortgage debt in the sense that the mortgagor is entitled to recover the property or its value without regard to the amount remaining due on the mortgage." *Gauche v. Milbrath,* 94 Wis. 674, 69 N. W. 999. See *Vreeland v. Waddell,* 93 Wis. 107, 67 N. W. 51. It follows from what has been said that there was no error in refusing to allow the counterclaim in question to be amended on the trial, so as to allege that the plaintiff appropriated and converted the proceeds of such sale to its own use.

6. The error assigned in admitting testimony of the train dispatcher, Downs, as to cars being returned partially loaded, on the ground that it was hearsay, seems to be unfounded, since such testimony was stricken out and the jury instructed to disregard it. Error is assigned in permitting Clark, the assistant manager of the railroad, and Wilcox, the treasurer of the railroad, to testify as to claims made by the railroad against the plaintiff for difference in freight between the actual weight of the cars, as loaded, and the minimum load of the cars stipulated for in the railroad contract, and claims therefor against the plaintiff, and as to the receipt of bills therefor. Such evidence was admitted under the contract of August 2, 1900, upon which the fourth counterclaim was based. In that contract the plaintiff agreed in terms to furnish the cars. The evidence was offered in support of the offset pleaded in the reply to that counterclaim, and seems to

have been admissible for that purpose. The argument is that it was inadmissible to prove that sufficient cars were furnished to the defendants. But no specific objection was made upon that ground, nor was the court requested to restrict the consideration of such evidence to the offset so pleaded in the reply. Since the evidence was admissible, when offered, as tending to prove such offset, the error, if any, is in failing to restrict the consideration of such evidence to that purpose. Under the circumstances mentioned, we must hold that the admission of such testimony was not reversible error. *Tebo v. Augusta,* 90 Wis. 405, 407, 408, 63 N. W. 1045; *Hiles v. Hanover F. Ins. Co.* 65 Wis. 585, 27 N. W. 348; *Cayon v. Dwelling House Ins. Co.* 68 Wis. 510, 32 N. W. 540; *Erdall v. Atwood,* 79 Wis. 1, 6, 47 N. W. 1124. Especially is this so since the plaintiff at the close of the trial, and before the case was submitted to the jury, withdrew its claim of offset to the fourth counterclaim, and the jury found that the defendants had no cause of action under that counterclaim.

*By the Court.*—The judgment of the circuit court is affirmed.

SIEBECKER, J., dissents.