## CENTRAL COMMERCIAL CO. v. JONES–DUSENBURY CO.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1918.)

No. 2490.

1. CUSTOMS AND USAGES ⬥15(1)—EVIDENCE—ADMISSIBILITY—WRITTEN CONTRACTS.

Where a written contract for sale of rosin was ambiguous on the question of possession, evidence as to general trade customs was admissible.

2. CUSTOMS AND USAGES ⬥18—PLEADING—NECESSITY.

Where a written contract was ambiguous, evidence of general trade customs was admissible, though not pleaded.

3. EVIDENCE ⬥354(17)—SALESBOOK.

Where defendant, having contracted with plaintiff for the rosin manufactured by a particular concern, refused rosin tendered on the ground that plaintiff was attempting to work off that of other manufacturers, a salesbook was competent to show the quantity of rosin delivered.

4. EVIDENCE ⬥158(28)—BEST AND SECONDARY EVIDENCE.

Where plaintiff sold to defendant rosin to be manufactured by a specified company, and defendant repudiated the contract, asserting that plaintiff attempted to work off rosin of other manufacturers, plaintiff is not obliged, having introduced direct testimony that the rosin it tendered to defendant was manufactured by the company specified, to introduce in evidence books of the manufacturer containing records of its production, on the ground that such books were the best evidence; for the evidence of plaintiff's witnesses was in no sense secondary.

5. APPEAL AND ERROR ⬥695(1)—REVIEW—VERDICT.

Where the record fails to disclose that the bill of exceptions contains all of the evidence produced in the case, the verdict cannot be reviewed on writ of error.

6. SALES ⬥332—RESALE BY SELLER.

Where the buyer declined to make payment when tendered delivery, and it was the intention of the parties that the seller should retain possession until payment, the seller may on the buyer's default resell the goods and recover damages on account of his loss.

7. COURTS ⬥328(9)—FEDERAL—AMOUNT IN CONTROVERSY—INTEREST.

In assumpsit for damages for failure to take and pay for rosin purchased, it was permissible to include in the damages the loss on resale of the rosin and the interest for the purpose of fixing the amount in controversy, so as to give the federal court jurisdiction, although under the statute interest as such cannot be included in estimating the jurisdictional amount.

8. APPEAL AND ERROR ⬥518(5)—RECORD—BILL OF PARTICULARS.

Where not saved in the bill of exceptions, a bill of particulars is no part of the record, and an objection that an amount below the jurisdictional amount of the court was involved cannot be sustained where based on a bill of particulars not so saved.

9. COURTS ⬥328(10)—FEDERAL—AMOUNT IN CONTROVERSY—CLAIM AND RECOVERY.

The damages claimed fix the amount in controversy for the purpose of determining whether the federal court has jurisdiction, and not the recovery.

10. COURTS ⬥328(7)—FEDERAL—AMOUNT IN CONTROVERSY—SET-OFF.

For the purpose of determining the jurisdiction of the federal court, the matter involved includes the demands of both plaintiff and defendant, where defendant pleaded a set-off.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the Jones-Dusenbury Company against the Central Commercial Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Defendant in error, herein called plaintiff, brought suit in assumpsit against plaintiff in error, termed defendant herein, in the District Court of the United States for the Northern District of Illinois, Eastern Division, laying its damages at $4,500, for damages growing out of defendant's refusal to accept and pay for certain rosin tendered by plaintiff as agreed by it in its written contract.

The declaration contains one special and the common counts. The contract sued on reads as follows:

"This contract and agreement between Central Commercial Company, a corporation organized and existing under the laws of the state of Illinois, herein called the buyer, and Jones-Dusenbury Company, a corporation organized and existing under the laws of the state of Louisiana, herein called the seller, witnesseth:

"First. The buyer agrees to buy from the seller and the seller agrees to sell to the buyer the entire delivery of the production of dross and chip rosin from the plant of A. E. Turner & Co. from April 1, 1912, to March 31, 1912, inclusive, and tendered prior to the termination of this contract, said deliveries to be made upon the yards of the Naval Stores Warehouse & Storage Company at Pensacola, and to be approximately six thousand (6,000) round barrels of dross and chip rosin, upon the terms and conditions named herein.

"Second. The price to be paid by the buyer and accepted by the seller for said dross and chip rosins on the yard of the Naval Stores Warehouse & Storage Company at Pensacola shall be twenty (20c.) cents per two hundred and eighty (280#) pounds below the average official closing Savannah markets for the corresponding grades of the week in which delivery is made on the terminals or in the warehouse aforesaid.

"Third. The buyer hereby agrees and covenants to pay on the dross and chip rosin delivered under this contract a fee of four (4c.) cents per barrel for initial storage to the Naval Stores Warehouse & Storage Company.

"Fourth. The seller agrees not to hold dross and chip rosin for a market, but to bill and deliver same to the buyer as fast as deliveries shall be made to the seller by A. E. Turner & Co., who deliver to seller as fast as manufactured in 100-barrel lots, the buyer paying for the same in Pensacola funds or the equivalent thereof. All rosins delivered under this contract shall be delivered in accordance with the requirements of the rules and customs of the Savannah Board of Trade as to grades, cooperage, and weights.

"In witness whereof the said parties have caused these presents to be executed by their duly authorized officers on this 17th day of May, A. D. 1912.

"[Signed]   Central Commercial Company,
                    "By Anthony Cosner, Treas.
"[Signed]   Jones-Dusenbury Company,
                    "By T. A. Jennings, Vice President.

"Signed, sealed, and delivered in presence of:
        "As to Central Commercial Co.:
              "M. M. Russell.
              "L. N. Waite.
        "As to Jones-Dusenbury Co.:
              "L. N. Waite.
              "M. M. Russell."

In pursuance of the contract plaintiff tendered to defendant for delivery about 6,400 barrels of rosin. Of these defendant refused to accept a large number, on the alleged ground that of the amount still on hand and not yet accepted and paid for some 600 barrels were not the manufacture of Turner & Co. Thereupon such further transactions were had between the parties

that plaintiff, after due notice to defendant, sold the same at less than the contract price, whereby there became due to plaintiff from defendant upon breach of said contract damages in the sum of $4,500, for the recovery of which sum this suit was instituted.

On the trial the proceedings were such that the jury rendered a verdict in favor of plaintiff, and found against a certain set-off to such damages filed by defendant for $3,845.77; motions to direct a verdict having been duly made and denied, and exception saved. On submission being duly made, the jury made affirmative answer to the following three questions:

(1) Were all the barrels of rosin which were delivered or tendered by plaintiff to defendant manufactured by A. E. Turner & Co.?

(2) From the evidence respecting the course of dealing between the parties under the contract, do you find that it was the understanding and intention of the parties that the plaintiff had the right of possession or control of the goods in controversy until they were paid for?

(3) Did plaintiff exercise due diligence in selling the 578 round barrels at Pensacola?

Motion for new trial was made and denied. The errors assigned are:

(1) That the court received evidence of a trade custom that rosin is delivered only when payment is made therefor, whereas the same was not pleaded and was inconsistent with the contract.

(2) That the court received extraneous evidence of the course of dealing with reference to shipping, etc., because such course of dealing was not pleaded and the contract not ambiguous.

(3) That the court received in evidence a certain salesbook claimed not to be competent.

(4) That the court received evidence that plaintiff stored, took out warehouse receipts for, and insured rosin in its own name.

(5) The court overruled the several motions for instructed verdicts and in arrest.

(6) The court instructed the jury to include interest not recoverable as damages.

Frank Crozier, of Chicago, Ill., for plaintiff in error.

S. S. Gregory and Albert S. Long, both of Chicago, Ill., for defendant in error.

Before KOHLSAAT, ALSCHULER, and EVANS, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1, 2] The trial court found that the contract was ambiguous in respect to the intention of the parties with regard to the matter of possession. To make the terms clear he admitted proof of the custom of the trade and the course of business between the parties, showing in whose name the warehouse receipts were taken out, the methods followed in loading into cars, payment, and evidence as to other matters involved deemed obscure in the contract, and necessary in arriving at an understanding of the conduct of the parties following their agreement.

We are of the opinion that the contract was obscure in the respects indicated by the trial court, and that the court was justified in receiving the evidence complained of. In doing so the contract was not modified. Nor was it essential that the customs and matters constituting the extraneous matters introduced be pleaded. The testimony was as to a general custom prevailing in the rosin trade, wherever located. The evidence was competent. Steidtmann v. Joseph Lay Co., 234 Ill. 84, 84 N. E. 640, in which it is said:

"The testimony of witnesses is admissible to explain not only technical words of art or science, but words or phrases having a local meaning or a

special meaning in a particular calling, trade, business, or profession.   *   *   *
A person entering into a contract in the ordinary course of business is pre-
sumed to have done so in reference to any existing general usage or custom
relating to such business.  And this is so whether he knew of the custom or
not."

See Lowe v. Lehman, 15 Ohio St. 179; Collins Ice Cream Co. v.
Stephens, 189 Ill. 200, 59 N. E. 524; Hewitt v. John Week Lumber
Co., 77 Wis. 548, 46 N. W. 822; Colman v. Clements, 23 Cal. 245;
Hansbrough v. Neal, 94 Va. 722, 27 S. E. 593; Field v. Lelean, 6 H.
& N. 617, 158 Eng. Rep. 255.

We do not find justification for the contention that the custom was
inconsistent with the terms of the contract.

[3] As appears from the contract, defendant contracted with plain-
tiff for the product of A. E. Turner & Co., and only that. The de-
fense interposed was that plaintiff undertook to work off upon defend-
ant rosin of other manufacturers. To refute this charge plaintiff,
among other evidence, introduced the testimony of the two alleged
best qualified witnesses, who swore unqualifiedly to the statement that
no rosin but that manufactured by Turner & Co. within the conditions
named in the contract was delivered by plaintiff to defendant, nor was
any other included in the rosin involved in this suit. A salesbook was
also introduced. This was competent to show the quantity delivered,
among other things. No evidence was introduced in rebuttal as to this
point.

[4] Defendant now raises the point that plaintiff had better evi-
dence as to the rosin manufactured by Turner & Co., viz. a certain
book alleged to contain records of the daily production and all other
rosin manufactured by Turner & Co. during the contract period, which,
defendant insists, should have been introduced in evidence on the trial
as being the best evidence of such production.

The contention is, to say the least, novel. The evidence introduced
was in no sense secondary. It was primary in its nature. There was
no denial of it. It may be that defendant could have found in the pro-
duction records some better data for cross-examination, or evidence
more conclusive to its counsel's mind, but the proposition that the rule
requiring the production of the best evidence applies to circumstances
and conditions such as here prevail does not commend itself to us.
There seems to have been enough competent evidence adduced to sat-
isfy the jury on that point, and we are not disposed to interfere.
Whatever degrees of evidence existed in the trial were merely those as
to the weight to be given to it and not as to its competency. No rea-
son appears why defendant, had it desired, could not have procured
access to the book, if there were one, in the usual way.

[5, 6] Defendant complains of the ruling of the court in receiving
evidence that plaintiff stored and took warehouse receipts for and
insured the rosin in its own name. Owing to the obscurity as to cer-
tain language of the contract bearing upon and involved in matters
affecting the resale of the rosin, we have concurred in the ruling of the
trial court upon that question. Among those are included the question
of the possession, right to possession, and title of the rosin. The jury
found that it was the intention of the parties that plaintiff should re-

tain possession of the rosin until paid for. The record fails to disclose that the bill of exceptions contains all of the evidence produced in the case. We are therefore not at liberty to review the verdict in that respect. The evidence discloses that at the time when plaintiff resold the rosin in suit it had been tendered for delivery to defendant, but payment was not made as agreed. Certainly the right of possession had never vested in defendant, because of its refusal to pay, notwithstanding such delivery as is here disclosed. Urbansky v. Kutinsky, 86 Conn. 22, 84 Atl. 317; Sands et al. v. Taylor et al., 5 Johns. (N. Y.) 395, 4 Am. Dec. 374; Owens v. Weedman, 82 Ill. 409; Sturtevant v. Orser, 24 N. Y. 538, 82 Am. Dec. 321; Roebling's Sons Co. v. Fence Co., 130 Ill. 660, 22 N. E. 518; Habeler v. Rogers, 131 Fed. 43, 65 C. C. A. 281.

Under the circumstances of the case, we conclude that the right of possession was in plaintiff at the time of resale, and the sale properly made. Defendant makes no serious complaint as to the manner of its carrying out. There is nothing in the record to impeach the fairness of plaintiff in making the sale. So far as we can gather from the facts shown, the burden cast by the law upon it was fully and fairly sustained. As above stated, we must at any rate assume such to be the case as the record now stands.

Defendant assigns as error that part of the charge to the jury in which the court tells them they may include interest as damages in case they find for the plaintiff, the same to be figured from the commencement of the suit, since the time the contract was broken.

[7] The point is material as bearing on the question of jurisdiction, since the loss incurred on resale was less than $3,000, the minimum amount necessary to give the federal court jurisdiction. Under the statute interest cannot, as such, be included in estimating the jurisdictional amount. Plaintiff as well as the trial court arrived at the amount of the damages by including in the principal sum, among other items, interest, or a sum equal to interest calculated at the legal rate on said balance remaining unpaid from the time the contract was broken. This construction of the statute as applied to cases similar to the present case is based upon the rule of law followed by Mr. Chief Justice White in Brown v. Webster, 156 U. S. 328, 15 Sup. Ct. 377, 39 L. Ed. 440, where the cause of action was the sale, warranty, and eviction from certain premises by reason of failure of title. Damages were alleged as for one principal sum of $6,342.40, whereas the original transaction was with regard to a sale of land not exceeding $1,200 in value. The point was made that under the law of the state in which the land was situated damages in case of eviction were limited to a return of the purchase price with interest thereon, which could not exceed $2,000, and consequently fell short of the jurisdictional amount.

"This contention," says the court, "overlooks the elementary distinction between interest as such and the use of an interest calculation as an instrumentality in arriving at the amount of damages to be awarded on the principal demand. As we have said, the recovery sought was not the price and interest thereon, but the sum of the damage resulting from eviction. All such damage was therefore the principal demand in controversy, although interest and price and other things may have constituted some of

the elements entering into the legal unit, the damage which the party was entitled to recover. Whether, therefore, the court below considered the interest as an instrument or means for ascertaining the amount of the principal demand is wholly immaterial, provided the principal demand as made and ascertained was within the jurisdiction of the court. Indeed, the confusion of thought which the assertion of want of jurisdiction involves is a failure to distinguish between a principal and an accessory demand. The sum of the principal demand determines the question of jurisdiction; the accessory or the interest demand cannot be computed for jurisdictional purposes. Here the entire damage claimed was the principal demand without reference to the constituent elements entering therein. This demand was predicated on a distinct cause of action—eviction from the property bought. Thus considered, the attack on the jurisdiction is manifestly unsound, since its premise is that a sum, which was an essential ingredient in the one principal claim, should be segregated therefrom, and be considered as a mere accessory thereto."

So here the suit was brought to recover damages for failure to take and pay for 578 barrels of rosin, not for the value of the rosin and interest. The whole amount claimed sounded in damages, of which the sum computed, as though it were interest, formed a part, and should be treated as a part of the principal sum, and not as an accessory demand. The same ruling was had in Continental Casualty Co. v. Spradlin, 170 Fed. 322, 95 C. C. A. 112, in a suit brought to recover damages for breach of a contract of assurance. The action was in assumpsit, and the damages were laid at $3,000.

"The exception of the plaintiff in error," says the court, "is upon the ground that the declaration discloses $2,000 as the principal demand, and that this should oust the jurisdiction; the further proposition being that (the) amount alleged and recovered above $2,000 was interest. We do not agree to this proposition. There was no contract for interest in this policy. The action is in assumpsit for damages for failure to perform. The interest, therefore, was not a mere incident or necessary to the amount demanded, but constituted, together with the amount set out in the policy, aggregate damages for the breach. We think Brown v. Webster, 156 U. S. 328, 15 Sup. Ct. 377, 39 L. Ed. 440, settles this point."

This doctrine is supported by numerous authorities, among others the following: Penn. Schuyl. V. R. Co. v. Ziemer, 124 Pa. 560, 571, 17 Atl. 187; Allegheny City v. Campbell, 107 Pa. 530, 52 Am. Rep. 478; Richards v. Citizens' Natural Gas Co., 130 Pa. 37, 40, 18 Atl. 600; 1 Sedgwick on Damages, § 282 et seq.; 22 Cyc. 1495, 1496; Hubbard v. Callahan, 42 Conn. 524, 19 Am. Rep. 564.

[8, 9] It is objected that the bill of particulars discloses a principal claim of only $2,800. But the bill of particulars is no part of the record, not having been saved in the bill of exceptions. The Star Brewery v. Farnsworth, 172 Ill. 247, 50 N. E. 228. The damages claimed, however, amount to $4,500. This, we think, adequately disposes of the last-named exception. As was said in Peeler v. Lathrop, 48 Fed. 780, 786, 1 C. C. A. 93, 99:

"It is not, however, the amount that plaintiff is able to prove he is entitled to that determines the amount in dispute for the purpose of jurisdiction; for otherwise the failure of the plaintiff to recover would oust the court of jurisdiction. The amount in dispute, or matter in controversy, which determines the jurisdiction of the Circuit Court, in suits for the recovery of money only, is the amount demanded by the plaintiff in good faith."

To the same effect are Hilton v. Dickinson, 108 U. S. 165, 2 Sup. Ct. 424, 27 L. Ed. 688; Hampton Stave Co. v. Gardner, 154 Fed. 805, 83 C. C. A. 521; Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501, 29 L. Ed. 729; Vance v. W. A. Vandercook Co., 170 U. S. 468, 18 Sup. Ct. 645, 42 L. Ed. 1111; LeRoy v. Hartwick (D. C.) 229 Fed. 857, 858.

The plaintiff, having, as we find from the record, brought suit in good faith for $4,500, is entitled to maintain its suit here. Armstrong v. Walters (D. C.) 219 Fed. 320; Wetmore v. Rymer, 169 U. S. 115, 18 Sup. Ct. 293, 42 L. Ed. 682; Schunk v. Moline, Milburn & Stoddard Co., 147 U. S. 500, 13 Sup. Ct. 416, 37 L. Ed. 255; Smithers v. Smith, 204 U. S. 632, 27 Sup. Ct. 297, 51 L. Ed. 656.

[10] Defendant, with the plea of the general issue, gave notice of a set-off of $2,000 and endeavored to enforce the same on the trial. For purposes of jurisdiction it has been frequently held that in cases similar to the instant case the matter involved includes the demands of both plaintiff and defendant. Shappirio v. Goldberg, 192 U. S. 232, 24 Sup. Ct. 259, 48 L. Ed. 419; Merchants' Heat & Light Co. v. Clow & Sons, 204 U. S. 286, 27 Sup. Ct. 285, 51 L. Ed. 488; American Sheet & Tin Plate Co. v. Winzeler (D. C.) 227 Fed. 321; Lee v. Continental Ins. Co. (C. C.) 74 Fed. 424; Lewis Mercantile Co. v. Klepner, 176 Fed. 343, 100 C. C. A. 285.

The court had jurisdiction and, in our opinion, rightly entered judgment in accordance with the verdict.

The judgment is therefore affirmed.