UNITED STATES FIDELITY & GUARANTY COMPANY OF BALTIMORE, MARYLAND, and another, Respondents, vs. FOREST COUNTY STATE BANK OF CRANDON, Appellant.

*September 13—October 8, 1929.*

For the appellant there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *R. B. Graves*.

*Allan V. Classon* of Oconto, for the respondents.

CROWNHART, J. This case comes here as a continuation of the litigation considered in *Forest County v. Poppy,* 193 Wis. 274, 213 N. W. 676. The facts are not in dispute. As related in that case, and found in this case, Poppy was county treasurer of Forest county. He was required to

make deposits of funds of the county in county depositories designated as such by the county board. This he neglected and refused to do until commanded by the judgment of the circuit court. After some delay he went to the First National Bank of Crandon, where he had county funds on deposit, and secured a blank check or draft, which he took to his office and filled out in the nature of a sight draft on the First National Bank of Crandon, in favor of the Forest County State Bank, which bank was situated in Crandon, across the street from the First National Bank, a distance of about 200 feet. He then took this sight draft or check to the Forest County State Bank, where he already had an account as county treasurer, made out a deposit slip for the amount, and deposited the same with the bank and received credit for the amount of the draft. This was done at about closing time of the bank that day.

On the following day, April 21, 1925, in accordance with the usual custom, the two banks cleared their accounts by charging checks or drafts against each other, and balancing the account by a draft on a correspondent bank. At this time it was found that the Forest County State Bank had a balance in its favor against the First National Bank of $2,347.74. The First National Bank thereupon issued a draft on the Federal Reserve Bank of Minneapolis to the Forest County State Bank for that amount, and debited Poppy's account on its books accordingly. The Forest County State Bank thereupon forwarded the draft on the Federal Reserve Bank to its correspondent in Milwaukee for collection.

On April 22, 1925, the First National Bank of Crandon was closed by order of the federal banking department, and a receiver was appointed, who stopped payment on all checks of that bank outstanding, including the draft to the Forest County State Bank. That draft having been refused

payment, on April 24th was returned to the Forest County State Bank and received there April 27, 1925, and was thereupon charged back to the account of Henry Poppy as county treasurer. Forest county brought suit for the amount claimed to be due the county against Henry Poppy and the United States Fidelity & Guaranty Company, his surety, the respondent herein, and in that action recovered judgment for the amount of the draft in question, $2,347.74, which judgment was paid by the respondent Guaranty Company as surety of the treasurer. The Guaranty Company was thereupon subrogated to all the rights of Henry Poppy, the county treasurer, and brought this action as such, claiming that the Forest County State Bank became the owner of the sight draft here mentioned upon the same being deposited with it, and that the matter became a completed transaction at that time. It therefore demanded judgment against the Forest County State Bank because of its refusal to pay the amount of the draft so charged back to Henry Poppy.

The trial court held that the transaction between Poppy and the Forest County State Bank, when he deposited the sight draft therein on the 20th of April, 1925, amounted to a sale of the sight draft to the Forest County State Bank, and that it thereupon became the owner thereof with the right to charge it back to the drawer only in case of dishonor after presentment and notice to the drawee. In other words, the learned circuit judge held the sight draft to be a negotiable instrument, with the only liability attached to be that of an indorser on the contract.

But there was no indorsement in this case. The sight draft was never used as a negotiable instrument, but remained in the hands of the original parties to it. There was no contract of indorsement, and could be none under the circumstances. The circuit court based its decision on *Douglas v. Federol Reserve Bank*, 271 U. S. 489, 46 Sup. Ct. 554,

70 Lawy. Ed. 1051, and *Aebi v. Bank of Evansville,* 124 Wis. 73, 102 N. W. 329. Whether or not there was a sale of the instrument in question would depend on the intention of the parties. 3 Ruling Case Law, p. 524, § 152 (9); *Equitable Trust Co. v. Rochling,* 275 U. S. 248, 48 Sup. Ct. 58, 72 Lawy. Ed. 264. There was nothing in this transaction that would indicate the intent of the parties to make a sale or purchase of the instrument in question, and no such transaction can be reasonably inferred from the facts in the case. Manifestly, the Forest County State Bank would not purchase a check or draft of this amount without indorsement or any inquiry as to whether or not the same would be honored.

Under a somewhat similar state of facts, the supreme court of Ohio held, in *Hilsinger v. Trickett,* 86 Ohio St. 286, 99 N. E. 305:

"But the delivery of the certificate in the manner shown by the admitted facts was a delivery for collection; of course, to result in liability on the part of the bank in case of collection, and imposing the duty of reasonable diligence in efforts to collect. In short, the plaintiff, by the act of sending the certificate, made the bank his agent for the collection of the certificate."

In *Forest County v. Poppy,* 193 Wis. 274, 281, 213 N. W. 676, speaking of this same transaction, we said:

"He [Poppy] sought to transfer the cash by draft on the First National Bank, given to the Forest County State Bank, and thereby he made such bank his agent in making the transfer."

While that statement is not necessarily conclusive in this case, it was advisedly made and is now adhered to.

But it is contended that even though the Forest County State Bank was the agent of the plaintiff to collect said draft, such agency was terminated by said bank when it chose to accept the Minneapolis draft from the First National Bank

in lieu of cash. It appears that the First National Bank had on hand in cash, at the time the checks were cleared on April 21st, a sufficient sum to have paid the balance due the Forest County State Bank in cash, and had the Forest County State Bank demanded the cash it probably would have received it.

It is undoubtedly the rule that a collecting agent is without authority to accept from the principal-debtor anything other than legal tender, and that rule applies to banks receiving commercial paper for collection, unless there is a general custom to the contrary. In this case it appears without controversy, and the court so finds, that it was a general custom for banks to accept the drawee bank's draft or check instead of money, and that the transaction in this case was strictly in accordance with that general custom.

An agent has implied authority from his principal to do business in his behalf in accordance with the general custom in that business. 21 Ruling Case Law, p. 853, § 33; 31 Cyc. 1330. In making the bank his agent for the collection of the check or draft, Poppy is deemed to have assented and authorized his agent to act in accordance with the usual and general custom of banks in making such collections. In the case of *Hilsinger v. Trickett, supra,* the court, in referring to a similar matter, said:

"In doing so he [plaintiff] must be held to have assented to the usual procedure of banks in making such collections, provided such procedure is reasonable, and the burden of proving the usual methods unreasonable is upon the party complaining."

Poppy was charged with knowledge of the general custom of banks in this respect. In *Ross v. Northrup, King & Co.* 156 Wis. 327, 144 N. W. 1124, it was said:

"A general custom among wholesale seed-men not to warrant seed is binding on a retail dealer purchasing from one of them, although such purchaser may be ignorant of it."

There was no proof in this case that the general custom mentioned was unreasonable, and the reasonableness of such custom has been generally recognized by the courts. Where liability has resulted from the surrender of a check or draft and the acceptance of another check or draft in lieu thereof, it has been because the paper to be collected was satisfied and discharged, or the rights of the maker or of any indorser thereon have been lost or impaired. In such a case there is strong reason for holding liability on one whose conduct has resulted in the loss. However, in this case there was no loss by reason of the surrender of the paper. The liability of the First National Bank to Poppy was not satisfied, and there was no indorser to be affected. The relation of the parties stood just the same after the surrender of the check as before.

We are satisfied, and so hold, that the Forest County State Bank was the agent of Poppy to collect the sight draft deposited with the bank; that the Forest County State Bank acted with due diligence and within its authority as agent in making such collection; that the acceptance of the draft from the First National Bank on the Federal Reserve Bank of Minneapolis was in accordance with the general custom of banks in making such collections; that the agent's authority to act in accordance with such general custom was implied; and that there was no negligence on the part of the Forest County State Bank in the transaction involved. It follows that the circuit court was in error in rendering judgment against the bank.

*By the Court.*—The judgment of the circuit court is reversed, with directions to dismiss the complaint.