SICKINGER, Respondent, vs. RAYMOND, Appellant.

*September 15—October 10, 1922.*

*Principal and agent: Statements of alleged agent as proof of agency: Implied agency: Burden of proof: Evidence: Sufficiency.*

1. Statements by A., who had entered into a written contract to sell logs to the defendant, that he was acting for the defendant and that plaintiff, whom he hired to buy logs, was going to work for the defendant, are no evidence that A. was authorized to create liability against the defendant.

2. Where defendant entered into a contract to purchase logs and the seller employed plaintiff to buy and scale logs and load them on cars, in an action by plaintiff for services and labor performed the evidence is *held* not to justify a finding that plaintiff was employed by defendant through an alleged agency of the seller.

3. If a principal so conducts his business as to lead the public to believe that his agent has authority to contract in the principal's name, he is bound by the acts of such agent within the scope of his apparent authority as to contracts with persons who, acting in good faith, believe, and have reasonable ground to believe, that the agent has such authority.

4. Although the defendant and A. might have modified their written contract in such a way that A. might charge the defendant with expenses not contemplated in the contract, the burden of proving this change or any implied agency on A.'s part was upon the plaintiff.

5. On plaintiff's second cause of action to recover for an indebtedness from a third person alleged to have been assumed by defendant, the evidence is *held* not to show there was an unconditional promise to pay the plaintiff.

APPEAL from a judgment of the circuit court for Lincoln county: A. H. REID, Circuit Judge. *Reversed.*

Action to recover $168.47 for work alleged to have been done for defendant between January 7 and July 29, 1921, in the buying of logs, and the sum of $421.17 for loading said logs on cars; also a second cause of action to recover $285.36 for an indebtedness due plaintiff from a third party, which it is alleged defendant agreed to pay plaintiff

in consideration of the release by the third party of that amount due him from defendant. Defendant is a wholesale lumber dealer of Tomahawk, doing business under the name of Raymond Lumber Company. Plaintiff is a resident of Tigerton, and was at times engaged in buying logs for others.

It is undisputed that defendant never directly hired plaintiff to do any work for him. Plaintiff testified that in October, 1920, H. L. Andrews of Shawano told him that he was going to enter the employ of the Raymond Lumber Company as a buyer and that as soon as he got the prices he would write to him. In December, 1920, plaintiff wrote to Andrews making inquiries relative to buying logs for him. On January 7, 1921, Andrews sent plaintiff a schedule of prices to be paid for logs, the letter containing the language, "These prices are to be offered farmers and we pay you $1 per M. for buying."

About two weeks later Andrews sent another schedule of prices substantially the same as the former, the letter being signed "Raymond Lumber Company, per H. L. A." On January 13th Andrews had made a contract with the defendant whereby he agreed to sell him 200,000 feet of hardwood logs at specified prices. Between the receipt of the first and second schedule plaintiff had begun to buy logs. His procedure was to receive the logs at a certain landing, scale them, and send a report to Andrews, giving the names of those from whom the logs had been bought and the amount due each. Andrews kept the report and sent a copy to defendant, who thereupon made out checks payable to the ones from whom the logs had been bought and sent them direct to plaintiff for distribution. The first of these checks was made out and sent early in February.

In July, 1921, an agreement was made whereby Andrews was to pay plaintiff $2.50 per thousand for loading logs on cars. All of the logs which had been delivered were then

loaded.   Men were employed by plaintiff, some of whom he
paid and some of whom were paid by Andrews.

As to the second cause of action, it appears that plaintiff
cut and hauled a quantity of logs for one Klundt and was
to receive therefor $8 per thousand; that plaintiff scaled
these logs and sent the report to Andrews showing the total
amount due and the amount due him from Klundt; that
Andrews sent a copy of the report to defendant showing
the amount due Klundt and showing the amount due plaint-
iff as $285.36; that Andrews instructed the defendant to
withhold payment; that later Klundt was paid in accordance
with the report of plaintiff; and that no check was sent
plaintiff for the amount due him.   Plaintiff, in addition to
sending the report to Andrews, later wrote directly to the
defendant respecting the Klundt account, and received a
letter containing a check to apply on the account.   The
letter stated: "Beg to say that the balance will be sent for-
ward as soon as we can get in touch with our Mr. H. L.
Andrews and have him authorize payment of same."   It
appears that plaintiff wrote directly to defendant concern-
ing a few other accounts.

In September, 1921, plaintiff's attorney demanded pay-
ment of defendant.   In the correspondence which followed,
defendant took the stand that he had never hired plaintiff
and Andrews had no authority to hire any one in his behalf;
that he had made out checks payable to those who had
furnished the logs only to protect himself; that it was his
understanding from Andrews that plaintiff guaranteed the
scale and grade of the logs and that he had held out enough
of plaintiff's account to protect himself; and that as a result
of plaintiff's improper grading he (defendant) had charged
him $564.87.

There is no dispute as to the amount due for buying and
loading logs or the amount to which plaintiff is entitled for
the work performed for Klundt.   Early in September de-

fendant sent plaintiff a statement showing that there was due him for buying and loading logs and for his work for Klundt the sum of $875. It also showed that he had been charged $564.87 for mistakes in grading, and $140.65 for "labor paid by us." The letter inclosed a check for the balance, $169.48.

At the trial defendant testified that Andrews was not his agent during the preceding winter but was an independent dealer selling to him; that all of the logs above mentioned were credited to Andrews' account and that the checks sent to plaintiff were charged to Andrews; that it was the common practice for dealers to make out checks payable to the men who delivered the logs in order to avoid trouble; that he had bought no logs from plaintiff and had had no business dealings with him; that the letters written by defendant in September and October were written merely to settle up the affair for the benefit of all concerned.

In a special verdict the jury found, in substance, that Andrews at the time of engaging plaintiff to buy logs in the winter of 1920–1921 represented that he was acting on behalf of the Raymond Lumber Company; that later defendant had knowledge that Andrews had pretended to engage plaintiff on his behalf and had consented thereto; that defendant had been informed in the spring of 1921 that plaintiff had got out the Klundt logs and had delivered them and that Klundt had agreed with plaintiff that he should collect therefor $8 per thousand out of the proceeds of the logs; that defendant assented to this arrangement and agreed unconditionally to pay plaintiff the $8 per thousand; that when plaintiff agreed to load the logs in question for $2.50 per thousand, in July, 1921, he believed, because of appearances for which defendant was responsible, and had reasonable ground to believe, that Andrews was defendant's agent and authorized to employ plaintiff to load logs.

Judgment was entered in accordance with the prayer of the complaint.

For the appellant there was a brief by *G. M. Sheldon* of Tomahawk, attorney, and *F. J. Smith* of Merrill, of counsel, and oral argument by *Mr. Smith.*

*Llewellyn Cole* of Clintonville, for the respondent.

JONES, J. In the first cause of action it is alleged in the complaint that between January 7, 1921, and July 26, 1921, plaintiff bought logs for defendant at his instance and request and that defendant agreed to pay for such services $168.47, and that between the same dates he loaded the logs at defendant's request and that defendant agreed to pay therefor $421.17.

There is no claim that there was any oral communication between the parties in respect to these transactions. They had never seen each other before the action was tried. There is no claim that there was any express written agreement between them, although certain exhibits and letters were offered in evidence on which plaintiff relies.

The action is based on the theory that Andrews, residing at Shawano, was the agent of defendant, and that he, having authority to do so, with the knowledge and assent of defendant, employed plaintiff to buy logs on behalf of the defendant. It is further claimed that, even if Andrews did not have the requisite authority, the plaintiff had reasonable ground to believe, because of appearances for which defendant was responsible, that Andrews was defendant's agent and had authority to employ plaintiff to load the logs.

It is apparent that the relations between Andrews and defendant are quite necessary to be considered. The written contract between Andrews and defendant referred to in the statement of facts was a formal agreement, dated January 13, 1921, in which Andrews agreed to sell and deliver to defendant on board cars before April 1, 1921, at specified places, 200,000 feet of logs. The kinds of logs and the prices for each kind were specified. There were other terms usual in contracts of that character, but there was no lan-

guage from which any inference could be drawn that Andrews was in any sense or for any purpose the agent of defendant. It was a simple contract of bargain and sale for future delivery.

It is argued by plaintiff's counsel that as against plaintiff, a third party, this contract is not conclusive as to the relations of Andrews and defendant. Of course this is true, and yet it is not to be ignored in considering the nature of the dealings of the parties to it and in considering whether subsequent to its execution they were acting as vendor and vendee or as principal and agent. The execution of this contract is not denied by plaintiff's counsel nor is it claimed that it was not made in good faith. But it is claimed that notwithstanding the agreement Andrews represented to plaintiff that he was going to work for defendant, and the jury found that he made such representation. This was denied by Andrews, but if the litigation were between him and plaintiff we should feel bound by the finding of the jury. As against defendant, however, this conversation was no evidence that an important written agreement between buyer and seller could be treated as one authorizing the seller to create almost unlimited liability against the buyer.

One of the most important facts relied on to establish that Andrews was the agent of defendant and had authority to employ plaintiff was that in a schedule of prices which might be paid, furnished plaintiff by Andrews, some of the prices were higher than those agreed to be paid in the contract between Andrews and defendant, and it was argued that this was consistent only with the view that Andrews was an agent having authority to fix prices and hire employees. In explanation of this Andrews testified that the schedules contained the maximum prices; that it was expected that lower prices would be paid if logs could be secured for them; that it was necessary to meet the market and that he expected that there would be an "even break."

Plaintiff's counsel also relies on the fact that about the middle of January a schedule of prices signed "Raymond Lumber Company, per H. L. A.," was written by Andrews and handed to plaintiff, and it is claimed that from this agency might be inferred. The fact that Andrews had used defendant's name in this schedule was not known to defendant, and Andrews testified that it was without authority and by mistake.

In April plaintiff wrote directly to defendant with reference to payment of an account with one of the farmers which had been delayed, and defendant replied that he would have Andrews straighten it out. In May, in another letter referring to an account, defendant wrote that he would have *our* Mr. Andrews straighten it out.

Defendant had no notice that plaintiff made any claim against him until September, long after the work was done. In that month plaintiff's attorney wrote defendant claiming that he was liable. Several letters passed between them, and some language used in these letters is also relied on. But in each of these letters defendant stated distinctly that he had not employed plaintiff and denied all liability.

Some reliance is also placed on the fact that checks in payment for logs were sent by defendant directly to plaintiff to be delivered to the farmers. But it was well understood that this was merely for convenience in transacting the business as well as to secure protection to the parties concerned and prompt payment to those selling the logs. Plaintiff, defendant, and Andrews lived considerable distances apart. Plaintiff had engaged in the same kind of business before, and sometimes on his own account. He knew this was the customary method of paying for logs by those buying in large quantities.

The terms of the agreement between plaintiff and Andrews were in writing and it makes no mention of defendant. The letters and exhibits furnished to plaintiff were, with the few exceptions noted, all written by

Andrews, and we find nothing in them indicating that plaintiff was employed by defendant. Before plaintiff commenced his operations he wrote a letter to Andrews making inquiries as to prices and other details "about buying logs for you." With the exception of the conversation between plaintiff and Andrews above referred to, the testimony consists wholly of documentary evidence and is without conflict. We do not find in any of these documents, or in all of them, anything which justified the jury in finding that plaintiff was employed by defendant, or that the business was so conducted that he had reason to believe that he was so employed.

It is the well settled rule that if a principal so conducts his business as to lead the public to believe that his agent has authority to contract in the name of the principal, he is bound by the acts of such agent within the scope of his apparent authority as to contracts with persons who, acting in good faith, believe and have reasonable ground to believe that the agent has such authority. In the present case the written contract between Andrews and defendant clearly negatived the relation of principal and agent. Although the parties to it might have subsequently changed the contract in such manner that Andrews might have the right to charge the buyer with expenses and obligations not contemplated in the contract of sale, such change should not readily be presumed. The burden of proof as to any such change and as to the implied agency asserted was upon the plaintiff.

This is not one of those cases so often arising where an agency is admitted and the question is whether the agent has exceeded his authority. In its inception the relation of Andrews and defendant was plainly that of vendor and vendee, and there existed those conflicts of interest which are incident to that relation. It would be a very dangerous rule that the seller of goods for future delivery could charge the buyer with liabilities in no manner contemplated by the

contract of sale, and an agency to do so should not be lightly inferred.

Some claim is made that by correspondence with plaintiff's attorney defendant so ratified the transactions between Andrews and plaintiff that he is estopped to deny liability. This correspondence was months after the services had been rendered. There is no claim that plaintiff had lost any right of action against Andrews or his right to file a lien by reason of any conduct of defendant. There is no proof that defendant had knowledge of the conversations between Andrews and plaintiff with respect to the nature of their relations. The rule as to ratification was thus stated by Mr. Chief Justice Dixon:

"The supposed principal must not only have full knowledge of all the material facts relating to the contract, but also of every fact requisite to enable him to repudiate it; or the means of knowledge must be at hand, so that he may obtain it or it shall be his fault if he does not." *Ladd v. Hildebrant*, 27 Wis. 135, 144.

## Second cause of action.

Much of the foregoing applies equally to this cause of action. However, as to this transaction, the plaintiff on his own account cut and hauled logs for Klundt, for which Klundt was indebted to him in the sum of $285. He also bought and loaded them under his arrangement with Andrews and for that service was entitled to compensation.

When plaintiff rendered his account of this transaction, in February, in a letter to Andrews which he states was also sent to defendant, he stated that it was arranged between him and Klundt that this sum of $285 should be paid to himself and the balance to Klundt, and it is this amount which plaintiff claims the defendant unconditionally agreed to pay to him. After receiving the account defendant wrote plaintiff, sending a check for part of the account due Klundt, and stating that the balance would be sent when authorized by Andrews. Andrews notified defendant that

no part of this account should be paid and that it should be withheld because of serious error in grading the logs, and, in substance, that he would investigate the facts. He also notified the plaintiff of the objection made. This statement of account in which plaintiff requested that part of the remittance be sent to himself seems to have been the only one of its kind.

There had been no custom by which moneys were to be paid to plaintiff personally by defendant. The testimony shows that during all the transactions involved in both causes of action money had been paid by defendant only when authorized by Andrews. In view of the fact that the transactions would naturally extend through a considerable period and that there would have to be a final settlement of accounts between defendant and Andrews, such authorization by Andrews was necessary.

In this cause of action the claim is not based on the ground of agency of Andrews, but on the claim that defendant was indebted to Klundt and in consideration of being released from such liability to the extent of $285 agreed unconditionally to pay the same to plaintiff. The difficulty with this contention is that we find no proof of any such promise.

After receiving the statement of plaintiff in which he requested that the $285 be paid to him, statements of account were prepared by Andrews, and, in September, sent by defendant to plaintiff, in which credit was given for that amount, but it was coupled with a debit for a larger amount as an offset on account of serious errors in grading the logs by plaintiff. It was by no means an unconditional offer or promise to pay that amount or any amount whatever.

Defendant paid Klundt the full amount of his interest in the logs according to the scale, and it is claimed that this is evidence of a promise to pay plaintiff also. This does not necessarily follow. It cannot be taken as conclusive that Andrews and defendant were satisfied with the transactions

of plaintiff to which objection had been made or that as to him the objection was waived.

The only language or conduct of defendant which can be construed as a promise was connected with the condition of the approval of the account by Andrews. This approval was not given; on the contrary, defendant was warned not to make the payment of this part of the account. The evidence relied on to establish the unconditional promise of defendant to pay the debt of a third person was documentary and was not conflicting, and on its face shows that the alleged promise was conditional only.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.