FREDONIA CANNING COMPANY, Appellant, vs. SERGEANT & NICHOLOY, INC., Respondent.

*October 13—November 10, 1936.*

10

*Harry V. Meissner,* attorney, and *Robert P. Harland* of counsel, both of Milwaukee, for the appellant.

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Jefferson Burrus* of counsel, all of Milwaukee, and oral argument by *Mr. Burrus.*

MARTIN, J. The facts are not in dispute. The parties have had business dealings over a period of at least fifteen years. The functions of the broker—field and resident—and the trade practices and customs in the business clearly establish the scope and extent of the brokers' agency.

It appears that in the summer of 1931, Mr. Engle, the president of the defendant company, called at the plaintiff's factory at Fredonia in company with one Mr. Lachman, a resident broker engaged in business at Chicago. Mr. Engle introduced Mr. Lachman to Mr. Meyer, president of the plaintiff company, as his associate broker at Chicago. The possibility of making sales through Mr. Lachman was discussed, and in that connection plaintiff company agreed to send samples of its products to Mr. Lachman at Chicago.

On September 10, 1931, defendant company wrote plaintiff that Mr. Lachman was complaining because of not having received the samples which the plaintiff had agreed to send him. On September 22, 1931, defendant wrote plaintiff that Mr. Lachman had suggested that Mr. Meyer make a trip to Chicago. This letter, in part, states:

"Charlie Lachman . . . seems to think that if you would come down and spend a couple of days with him he could do a lot of business for you on both peas and beans."

Between September and December, 1931, five sales were made in Chicago, all consummated in accordance with the

accepted usage and customs of the brokerage business as heretofore indicated. As each order was accepted by the plaintiff company on October 15, 1931, for two cars of peas the invoices to the customer were mailed to the defendant. Upon receipt of the invoices, defendant billed the plaintiff for its commission at four per cent on the sale price. This commission was divided with the resident broker, Mr. Lachman. It appears that the defendant had resident brokers in Chicago other than Mr. Lachman.

It further appears that as a result of samples which the plaintiff sent to Mr. Lachman, the latter's customer, Sprague-Warner Company, entered into a contract with plaintiff company on October 15, 1931, for two cars of peas of a specified grade and price, in accordance with the samples. Shipment was made and rejected. Mr. Lachman notified defendant of the refusal of Sprague-Warner Company to accept the shipment. One of defendant's officers immediately notified Mr. Meyer that the shipment of peas had been rejected, and suggested that Mr. Meyer go to Chicago, contact Mr. Lachman, and try to adjust the matter.

Mr. Meyer went to Chicago. In company with Mr. Lachman he called upon Sprague-Warner Company and succeeded in getting them to accept one of the rejected cars of peas. While in Chicago, Meyer and Lachman tried to sell the other car of peas to other prospects but were unsuccessful. While in Chicago, Mr. Meyer authorized Mr. Lachman to dispose of the car of peas. Within a couple of days after Meyer's return home, Mr. Lachman telephoned to him that he had sold the remaining car of peas to the Chicago Macaroni Company and requested that the original consignee, Sprague-Warner Company, be instructed to release the car to him. It appears that Mr. Meyer so wired Sprague-Warner Company and the car was released to Mr. Lachman.

Mr. Meyer testified he was anxious to dispose of the car as promptly as possible to avoid demurrage charges.

In this particular transaction, it must be noted that the plaintiff did not follow its usual procedure of the accepted usage whereby the seller deals with the buyer and arranges his own terms of sale. Under the defendant's arrangement with the plaintiff under the trade practice and custom, defendant company would have no authority to make a sale of the car of peas to the Chicago Macaroni Company or to anyone else. The authority as to credit risk and terms of sale was specifically reserved by the seller. It appears that the car of peas had not been sold to the Chicago Macaroni Company. Instead, Lachman sold a part to the Continental Food Stores for which he collected the sum of $255. He sold the balance to Arrow Wholesale Grocery Company for $1,615. The grocery company was insolvent, and no payment has been made to the plaintiff on that account. Apparently Lachman absconded with the $255 which he had collected from the Continental Food Stores. Defendant was not informed as to the arrangement made between Mr. Meyer and Mr. Lachman following Meyer's trip to Chicago to adjust the difficulty with Sprague-Warner Company.

On December 8, 1931, defendant wrote plaintiff asking for the customary copies of the invoice to the purchaser. Under date of December 21, 1931, defendant wrote plaintiff as follows:

"We have a letter from Charlie Lachman stating that you recently called him on the phone and that he advised you that he was going to pay you the balance of the money due on the rejected car shipped to Sprague. Please advise us by return mail just what the status of this deal is now and we may be seeing Lachman in the next few days."

It appears that shortly following the date of this letter the names of the two parties to whom the peas had been sold were learned. A conference was had between officers of the plaintiff and defendant companies. At this conference copies

of the plaintiff's invoices to the two purchasers mentioned were given to Mr. Engle, one of the officials of the defendant company. Later, Mr. Engle made a trip to Chicago for the purpose of trying to collect the amount due plaintiff company. While there, he learned of the payment of $255 made some time in November to Mr. Lachman by the Continental Food Stores. Mr. Engle was unable to collect any part of the amount due from the Arrow Wholesale Grocery Company. It does appear in the evidence that the Arrow Wholesale Grocery Company made an offer of twenty-five per cent to its creditors. What became of the offer does not appear. The fact is immaterial in the view we take of the case.

On January 16, 1932, defendant wrote all of its Wisconsin clients, including the plaintiff, that it had discontinued working with Lachman, and would not be responsible for business done or collections made by him.

The appellant contends that Lachman was an agent of the defendant; therefore defendant is liable to the plaintiff for the agent's conversion, namely, for the $255 which Lachman collected from the Continental Food Stores and for the balance of the car of peas sold to the Arrow Wholesale Grocery Company for the agreed sum of $1,615. Upon the undisputed facts in the case, this contention cannot be sustained. Assuming that Lachman was an agent, what was the scope of such agency? Concededly, it was limited to the preliminary negotiation of sale in accordance with the accepted custom and usage of the brokerage business. The following statement is made in appellant's brief:

"It appears that the defendant, Sergeant & Nicholoy, Inc., was never authorized to complete a sale of the plaintiff's merchandise *in any case,* without first notifying the plaintiff and receiving its approval of the sale."

Clearly, then, the defendant would have no authority to resell the rejected car of peas to any prospective purchaser

without first submitting the matter to the plaintiff. The defendant, through all the years of its dealing with the plaintiff company, was never given authority to pass upon credit risks or to fix the final terms of sale. So far as defendant is concerned, its agency through the whole period of its dealing with the plaintiff company was limited in accordance with the general custom and usage of the broker's business; that is, to bring the parties—buyer and seller—together. There is no support in the evidence to warrant the conclusion that defendant assumed any responsibility beyond this.

In the transaction in the instant case, defendant's agency was at an end when, through the efforts of the two brokers, Sprague-Warner Company and the plaintiff company, as purchaser and seller, were brought together and a contract was consummated. Plaintiff's dealings with Lachman following the rejection by Sprague-Warner Company of the shipment were had with him personally and were outside of the agency between plaintiff and defendant. Mr. Meyer testified:

"*Q.* What did you say to Mr. Lachman before you went home? *A.* Well, like any other broker, I would tell him he should try and sell that for me."

Mr. Meyer did not inform defendant of his transaction at Chicago with Mr. Lachman. He testified he was familiar with the brokerage business; that he knew Mr. Lachman was a broker in food products with his office at 350 North Clark street, Chicago; that he knew that Sprague-Warner Company was a customer of Mr. Lachman. He further testified:

"I know the function of brokers is to bring buyer and seller together."

Appellant contends that failure to plead custom and usage deprives the defendant of such defense. This contention would be sound if we were considering a local custom. *John*

*O'Brien Lumber Co. v. Wilkinson,* 123 Wis. 272, 279, 101
N. W. 1050. The evidence in the instant case clearly estab-
lishes the existence of a general custom as claimed by the de-
fendant. Mr. Meyer, president of the plaintiff company,
admits that he knew the function of brokers is to bring buyer
and seller together. But, regardless of this admission, as a
matter of law, plaintiff is charged with knowledge of the
general custom. *Ross v. Northrup, King & Co.* 156 Wis.
327, 144 N. W. 1124; *U. S. F. & G. Co. v. Forest County
State Bank,* 199 Wis. 560, 565, 227 N. W. 27. No fact or
circumstance is disclosed by the evidence which would give
plaintiff the right to assume that defendant accepted any re-
sponsibility other than that which was sanctioned by the
custom and usage of the trade. It was no part of defendant's
duty to assist plaintiff in the collection of its accounts.
When such assistance was rendered, it was done either on
request or as a matter of accommodation.

The burden of proof was upon the plaintiff, not only to
show agency between defendant and Lachman, but to show
that such agency was sufficiently extensive to bind the de-
fendant by the conduct of Lachman. *Ames v. D. J. Murray
Mfg. Co.* 114 Wis. 85, 88, 89 N. W. 836; *Parr v. Northern
Electrical Mfg. Co.* 117 Wis. 278, 93 N. W. 1099; *Sickinger
v. Raymond,* 178 Wis. 439, 190 N. W. 93; *Smith v. Starkey,*
203 Wis. 56, 62, 233 N. W. 576; *Hansche v. A. J. Conroy,
Inc.,* 222 Wis. 553, 269 N. W. 309. Plaintiff has failed
to establish this burden of proof. We fail to find any
evidence as a basis for the finding that defendant is liable for
the misconduct of Mr. Lachman. The judgment of the cir-
cuit court must be affirmed.

*By the Court.*—Judgment affirmed with costs.