CARLSON, Respondent, v. TAYLOR and wife, and another, Defendants: SWEET and wife, and another, Appellants.

*No. 165. Argued February 6, 1969.—Decided March 4, 1969.*
(Also reported in 165 N. W. 2d 178.)

686

688

For the appellants there were briefs by *Nikolay, Jensen & Scott* of Colby, and oral argument by *Frank L. Nikolay.*

For the respondent there was a brief by *Potter & Wefel* of Wisconsin Rapids, and oral argument by *John M. Potter*.

HANLEY, J. The following issues are presented:

(1) Was there any credible evidence supporting the jury finding of agency;

(2) Was there any credible evidence supporting the jury finding of a conspiracy involving Robert Sweet and Helen Sweet;

(3) Are Robert Sweet and Helen Sweet individually liable for their actions performed as officers to the corporation;

(4) Was it error to proceed to trial in the absence of Robert Sweet and Helen Sweet;

(5) Was it error to dismiss the counterclaim of Robert Sweet and Helen Sweet for malicious prosecution; and

(6) Should specific performance have been granted in the absence of a showing that the remedy at law is inadequate?

## *Agency.*

Plaintiff could not point to any writing which established that Frank Taylor had authority to sell the Rock Farm. However, it is well established in this state that:

". . . parol authority may create an agency relationship which will permit the agent to bind the principal by a written contract to sell real estate, but such parol authority must be clear and express. In *Lauer v. Bandow* (1878), 43 Wis. 556, 563, involving an analogous situation, Mr. Chief Justice RYAN stated: 'Parol agency to charge a principal's realty ought to be express, and clearly established.' To the same effect see *Challoner v. Bouck* (1883), 56 Wis. 652, 14 N. W. 810." *Krause v. Holand* (1967), 33 Wis. 2d 211, 215, 216, 147 N. W. 2d 333.

It is conceded by both parties to this appeal that there is no direct evidence of an agency agreement between Frank Taylor and his sister Mary. However, plaintiff contends that an agency relationship is established by certain circumstantial evidence from which the jury had every right to infer that Frank Taylor had authority to sell the Rock Farm. Basically plaintiff's evidence boils down to the fact that Frank Taylor always acted and spoke as if he were the owner of the farm and that Mary Taylor never took any affirmative action to dispute that apparent ownership.[2] This is simply not sufficient to support an inference that Frank Taylor either had actual or apparent authority to sell the farm. At best, the evidence supports the inference that Frank Taylor had the authority to negotiate toward an offer which would be ultimately accepted or rejected by Mary Taylor.

When the Rock Farm was purchased in 1959 (under a land contract), Mary Taylor went with her brother to Indiana in order to negotiate the closing. When Frank Taylor's stepson wanted to buy the Rock Farm in late 1964, Frank Taylor conveyed that offer to Mary Taylor for approval. When the Sweets tried to buy the farm for Arrowhead (after the disputed option was given), Frank Taylor apparently did the preliminary negotiating. However, when the time came to close the deal, Mary Taylor went with her brother to Stevens Point to bargain for her own price. The record does not disclose the slightest evidence which would support the inference that Mary

---

[2] There was a multitude of evidence which showed that Frank Taylor held himself out as the owner of the Rock Farm. In addition to the letters which are in the record, Frank testified that he often referred to the Rock Farm as "my farm." It was previously noted that the Rock Farm was assessed under Frank's name. Mary Taylor never had the assessment changed. Moreover, at one point, Mary Taylor allowed Frank to advertise the farm for sale in his name. It also appears that Frank participated in negotiations to sell the farm to his stepson.

Taylor gave Frank Taylor the actual authority to sell the farm without her approval.

The second part of plaintiff's argument is that Frank Taylor had "apparent authority" to sell the farm.

". . . The distinction between authority and apparent authority is important. A principal may direct an agent not to do a particular act; as to that act the agent has no authority. The principal may by words or conduct lead a third person to believe reasonably that the agent has authority to act for the principal with respect to the forbidden act. If under such circumstances the agent acts, the principal is bound although the agent had no authority because the agent had apparent authority." *Zummach v. Polasek* (1929), 199 Wis. 529, 534, 227 N. W. 33.

A principal is liable for the actions of an agent who has apparent authority because some actions of the *principal* have misled the third party into reasonably believing that the agent had the authority which he seemed to possess. *Voell v. Klein* (1924), 184 Wis. 620, 200 N. W. 364; *McDermott v. Jackson* (1897), 97 Wis. 64, 72 N. W. 375. Before "apparent authority" is properly considered in a case, the third party must realize that he is dealing with an agent. In this case, the plaintiff testified that he never knew that Mary Taylor was the owner of the Rock Farm until after the option agreement was signed. Up until that time, plaintiff always thought that Frank Taylor was the owner.

"Since apparent authority is the power which results from acts which appear to the third person to be authorized by the principal, if such person does not know of the existence of a principal there can be no apparent authority." Restatement, 2 *Agency* 2d, p. 430, sec. 194, comment *a*.

It is questionable whether proof of "apparent authority" is the "clear and express" type of evidence which establishes a parol agency for purposes of charging a

principal's realty. But even if "apparent authority" is enough, the plaintiff's evidence fails to establish such authority.

There is another factor which should be considered in this case. Although there is no clear and unequivocal statement in the record, it appears that at all times pertinent in this case, the deed by which Mary Taylor took title to the Rock Farm was properly recorded in the register of deeds office for Adams county. The following portions of the record would sustain such a conclusion:

"*Q.* Did you ever look in the Register of Deeds office for Adams County to see who owned the Rock Farm? *A.* [By plaintiff, Walter Carlson] I had no reason to, really."

"*Q.* Now, Mrs. [Mary] Taylor, prior to April 15, 1965 and after December 30, 1960, you were the record holder of title of the property known as the Rock Farm, is that right?

"...

"*A.* I was the owner a year previous to that on a land contract and I think the date of that land contract was November 5, 1959."

Attorney Robert McDonald investigated the title to the Rock Farm in April, 1966, when that property was sold to Arrowhead. At that time he found merchantable title to be in Mary Taylor. All these factors, taken together, certainly indicate that title to the Rock Farm was definitely not in Frank Taylor's name when plaintiff took the alleged option to purchase on April 30, 1965. Thus plaintiff was put on notice that Frank Taylor was not the true owner of the Rock Farm.

"In general, under the recording laws, the recording of a deed or mortgage or other instrument entitled to be recorded is constructive notice to purchasers and encumbrancers who, subsequent to the recording, acquire

some interest or right in the property under the grantor or mortgagor. A subsequent encumbrancer or purchaser must know or take notice of the condition of the record title up to the time of creating the encumbrance or making the sale, for it is his duty to examine the record." 45 Am. Jur., *Records and Recording Laws,* p. 469, sec. 87.

This court has already held that an option to purchase is an interest in real estate. *Bratt v. Peterson* (1966), 31 Wis. 2d 447, 452, 143 N. W. 2d 538; *Telford v. Frost* (1890), 76 Wis. 172, 174, 44 N. W. 835. A person who takes such an interest in real estate is certainly one of those who is put on notice as to the condition of the title of the land.

". . . constructive notice is in point of literal fact neither notice nor knowledge. For the promotion of sound policy or purpose, the legal rights and interests of parties are treated as though they had actual notice and knowledge." *Schoedel v. State Bank of Newburg* (1944), 245 Wis. 74, 76, 13 N. W. 2d 534.

Constructive notice will not operate in favor of a party making false representations, but it certainly should operate in favor of a record title holder when an independent third party contracts to convey an interest in land which he does not own.[3]

It should be noted that even if Mary Taylor's deed was not recorded at the register of deeds office, the outcome of this case would not be changed because the evidence does not establish that Frank Taylor had authority to sell this farm. Constructive notice is only discussed to establish that plaintiff was not even equitably entitled to a judgment of specific performance.

---

[3] Thus if plaintiff brought a damage suit against Frank Taylor, the doctrine of constructive notice could not be used to establish that plaintiff knew title was in someone other than Frank Taylor. The recording acts are not intended as a protection to those who make fraudulent representations. *Schoedel v. State Bank of Newburg, supra.*

### Ratification.

Plaintiff also argues that even if there was not sufficient evidence to support the jury finding of agency, the evidence adduced at the trial was sufficient to establish that Mary Taylor ratified the lease and option to purchase.

Plaintiff properly points out that, although the lease was a separate document from the option, the lease and option to purchase were negotiated as a package transaction. Plaintiff concludes that Mary Taylor ratified this entire agreement by accepting the rent payments under the lease.

". . . A person cannot retain the avails of an unauthorized contract, made for his benefit by another assuming to act as his agent, and repudiate the responsibilities of such contract, and any attempt so to do, with full knowledge of the facts, constitutes a ratification of the unauthorized act and creates a liability on the part of such person to the same extent as if such contract were originally authorized." *Gnat v. Westchester Fire Ins. Co.* (1918), 167 Wis. 274, 277, 167 N. W. 250.

It is quite clear that there was no ratification of the unauthorized act.

"As a rule, if the principal, before changing his position to his prejudice, decides not to ratify an unauthorized act by the retention of the benefits thereof, he should return anything he may have received as a result of the unauthorized act." 3 Am. Jur. 2d, *Agency*, p. 563, sec. 177.

Twenty-four days after the lease and unauthorized option were entered into the plaintiff received the letter from Frank Taylor which admitted the option was not authorized and had been repudiated by his sister. At that point plaintiff had no obligation under either the lease or the option. He was free to take any action he desired. The fact that he continued performance under the lease does not indicate that Mary Taylor ratified

the package agreement between the plaintiff and Frank Taylor.

### Conclusion.

We conclude that the record does not support the jury finding of agency and therefore we do not reach the other issues raised by the appellants in this case.

We make no finding as to any liability which Frank Taylor and/or Alice Taylor have to the plaintiff because of their representations of ownership.

*By the Court.*—Judgment as against appellants is reversed and cause remanded for further proceedings with directions to dismiss the action as against appellants.