EVERLITE MANUFACTURING COMPANY, Respondent, v. GRAND VALLEY MACHINE & TOOL COMPANY, Appellant.

*No. 132.  Argued October 1, 1969.—Decided October 28, 1969.*
(Also reported in 171 N. W. 2d 188.)

For the appellant there was a brief by *Robert G. Roberts*, attorney, and *M. Robert Carr* of counsel, both of Racine, and oral argument by *Mr. Roberts*.

For the respondent there was a brief and oral argument by *Irving M. Berenson* of Kenosha.

HANLEY, J. The following issues are presented on this appeal:

(1) Was additional consideration required for the modification of the initial executory contract;

(2) Was Mr. Likes clothed with apparent authority by which he could bind the plaintiff corporation;

(3) Was the payment of $5,000, under the instant circumstances, sufficient ratification of the modification; and

(4) Was the payment of $5,000 an acceptance by plaintiff corporation itself under the objective rule of contracts?

### Consideration Unnecessary for the Modification of an Executory Contract.

The defendant correctly contends that the trial court erred when it found that plaintiff, without receiving additional consideration, could not be held contractually liable for the modification of the original agreement. In *Black Eagle Oil Co. v. Globe Oil & Refining Co.* (1958), 3 Wis. 2d 340, 343, 88 N. W. 2d 684, this court stated:

". . . No new consideration is required in order to support a modification of an executory contract. *Miller v. Stanich* (1930), 202 Wis. 539, 544, 230 N. W. 47, 233 N. W. 753. . . ."

The plaintiff and the defendant disagree as to when construction of the press was commenced and argue this point strenuously. Apparently they are of the opinion that if construction had begun prior to the attempted modification, the contract would no longer have been executory. However, as indicated in *Foley v. Marsch* (1916), 162 Wis. 25, 154 N. W. 982, the above principle is equally applicable to partially executed contracts. The *Foley Case, supra,* wherein the plaintiff had subcontracted to do work for the defendant, involved a situation substantially identical to the instant case. In *Foley,* the plaintiff, after partially completing a railroad which he had agreed to construct, notified the defendant of his

inability to complete construction at the originally agreed price. The defendant agreed to increase the contract price, and this court held that no additional consideration from the plaintiff was necessary to support the modification. The date upon which construction was commenced is thus immaterial in the instant case, and it is undisputed that construction had not been completed at the time of the attempted modification.

*Apparent Authority.*

As stated earlier, the trial court found that Mr. Likes did not have authority to contractually bind the plaintiff corporation but made no specific finding as to whether he possessed apparent authority. The defendant contends that despite any lack of actual authority plaintiff through its officers conducted itself in such a manner as to clothe Mr. Likes with apparent authority and should thus be bound by his modification of the contract.

" 'It is the well settled rule that if a principal so conducts his business as to lead the public to believe that his agent has authority to contract in the name of the principal, he is bound by the acts of such agent within the scope of his apparent authority as to contracts with persons who, acting in good faith, believe and have reasonable ground to believe that the agent has such authority.' *Sickinger v. Raymond* (1922), 178 Wis. 439, 446, 190 N. W. 93." *ABC Outdoor Advertising, Inc. v. Dolhun's Marine, Inc.* (1968), 38 Wis. 2d 457, 461, 157 N. W. 2d 680.

Under the facts in the instant case we must consider the distinction between authority and apparent authority.

" '. . . The distinction between authority and apparent authority is important. A principal may direct an agent not to do a particular act; as to that act the agent has no authority. The principal may by words or conduct lead a third person to believe reasonably that the agent has

authority to act for the principal with respect to the forbidden act. If under such circumstances the agent acts, the principal is bound although the agent had no authority because the agent had apparent authority.' *Zummach v. Polasek* (1929), 199 Wis. 529, 534, 227 N. W. 33." *Carlson v. Taylor* (1969), 41 Wis. 2d 685, 694, 165 N. W. 2d 178.

Although the apparent authority for which liability can be imposed upon the principal must be traceable to him, the words or conduct of the agent can also be relied upon if the principal has knowledge thereof and has acquiesced therein. *Hansche v. A. J. Conroy, Inc.* (1936), 222 Wis. 553, 269 N. W. 309; *Mattice v. Equitable Life Assurance Society* (1955), 270 Wis. 504, 71 N. W. 2d 262.

The defendant maintains that the apparent authority of Mr. Likes was established not only by the conduct of the actual plaintiff members, but also by the conduct of Mr. Likes to which they knowingly acquiesced.

In determining the reasonableness of the defendant's reliance, the factual setting in which it occurred is of paramount importance. The plaintiff corporation, of which Mr. Likes was to have become a member, had recently been reorganized, and thus the actual members, as well as Mr. Likes, were attempting to establish it as a going concern. Due to his technical knowledge and previous experience, Mr. Likes was requested by the other members of the group to initiate negotiations for the purchase of machinery. Although it is incredulous that he was in no way compensated for his efforts, as is asserted by the plaintiff, it is undisputed that his "negotiation" efforts were both requested and approved. Since even Mr. Barrett, the president of the defendant corporation, had been offered stock in the new corporation, it would not have been unreasonable for him to assume that the entire initiating group, including Mr. Likes, was to have a stake in the company's future. It is

within this factual backdrop that the subsequent negotiations must be viewed.

Pursuant to instructions from the actual plaintiff corporate members, Mr. Likes contacted Mr. Barrett and arranged a meeting to discuss the purchase of a 250-ton press. It is important to note that this meeting, as well as subsequent meetings, was attended by Mr. Likes, as well as the actual members of the plaintiff corporation. From the outset Mr. Barrett was thus led to believe that Mr. Likes was a member of the plaintiff group.

Consistent with such a belief, Mr. Barrett sent several quotations to Mr. Likes who in turn held meetings with the others to discuss their feasibility. These meetings culminated in an acceptance of Quotation No. 1808 which was signed by Mr. Lambrecht and mailed to the defendant.

Although both parties refer to No. 1808 as a binding contract, it is apparent that negotiations concerning the purchase continued. Sometime after receipt of Mr. Lambrecht's acceptance of No. 1808, Mr. Barrett telephoned the plaintiff's office to inform it of the change in both price and terms. The secretary-treasurer, Mr. Marotz, answered the call, but immediately turned the telephone over to Mr. Likes who was informed of the proposed modifications. Mr. Likes testified that he immediately informed the others, who then indicated their acceptance of the modifications.

Following this telephone call, Mr. Likes was sent Quotation No. 1815, which reiterated the modifications discussed in their telephone conversation. According to Mr. Likes' testimony, this quotation was forwarded to Mr. Lambrecht who returned it to Mr. Barrett accompanied by the check for $5,000. An examination of Quotation No. 1815 reveals Mr. Likes' signature to the following quotation:

"Mr. Ced Barrett.

"Please consider this copy our order for press. We will type it up as soon as stationery is available

"Total  price        $23,500.00
 Down  payment       5,000.00
                    _____
                     $18,500.00

"It is understood you will expedite del. fast as possible.

> Everlite Mfg. Co.
> 2111 83rd St.
> Kenosha, Wisc.

(signed)        O. W. Likes"

In corroboration of Mr. Likes' testimony, Mr. Barrett testified that several days after having sent Quotation No. 1815 he received in plaintiff's envelope both Mr. Likes' acceptance and a $5,000 check signed by Messrs. Lambrecht and Marotz. Both, however, denied having had any knowledge of No. 1815 at the time the check was sent and contend that it was sent as an advance on the original contract.

In *Ivers & Pond Piano Co. v. Peckham* (1966), 29 Wis. 2d 364, 370, 139 N. W. 2d 57, this court stated that three elements are necessary to establish apparent authority:

". . . (1) Acts by the agent or principal justifying belief in the agency; (2) knowledge thereof by the party sought to be charged; and (3) reasonable reliance thereon by a third party. [Cases cited]. . ."

In the instant case, the payment of $5,000 accompanied by Mr. Likes' acceptance of a contract calling for a $5,000 down payment will simply not support a claim that the check was in payment of a previous contract calling for a $2,000 down payment. On the contrary, it clearly indicates that the plaintiff corporation was cognizant of Mr. Likes' acceptance and acquiesced therein.

Mr. Likes had served as negotiator throughout the extended negotiations between the parties. Yet at no time

was the slightest indication given of his inability to contractually bind the plaintiff corporation. On the contrary, plaintiff's conduct was so persuasive that Mr. Likes himself was led to believe he possessed contractual authority. Clearly, under such circumstances, the defendant's reliance upon the conduct of both plaintiff and Mr. Likes was reasonable.

We conclude that Mr. Likes possessed apparent authority to bind plaintiff corporation to the modification of the original contract.

### Acceptance and Ratification by Everlite.

The defendant's final argument concerns the $5,000 payment by plaintiff. It is contended that the payment of $5,000 immediately following the proposed modification calling for such amount constitutes both a ratification of Likes' conduct and, under the objective rule of contracts, an acceptance of the proposal. These arguments are clearly presented in defendant's brief and are meritorious, but, in view of our ruling on apparent authority, do not warrant extensive discussion.

In support of its counterclaim the defendant established that the cost of the press as made for the plaintiff was $21,598.54. An additional $10,257.27 was required to be expended to rework the machine for sale to the new buyer. The sale price to the new buyer was $25,000, leaving a deficit of $6,855.81. Reducing this deficit by the amount of the down payment of $5,000, which defendant retained, leaves a deficit of $1,855.81. The trial court is directed to enter judgment for the defendant on its counterclaim in that amount.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment pursuant to the opinion. Costs allowed to appellant.