Ricardo RIVERA and Luis Galinda, Plaintiffs-
Respondents,

v.

Sydney M. EISENBERG, Defendant-Appellant.†

Court of Appeals

*No. 79-836. Submitted on briefs January 8, 1980.—
Decided February 11, 1980.*
(Also reported in 290 N.W.2d 539.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Sydney M. Eisenberg* and *M. L. Eisenberg & Associates* of Milwaukee.

For the plaintiffs-respondents the cause was submitted on the brief of *Louis J. Mestre* and *Legal Action of Wisconsin, Inc.* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Cannon, J.

CANNON, J. On March 21, 1978, plaintiffs-respondents entered into a lease to rent an apartment for a period of one year. The apartment building was owned and operated by the defendant-appellant, Sydney Eisenberg. Pursuant to the lease, plaintiffs posted $185 with the defendant as security against damage to the apartment upon termination of the lease. Plaintiffs also expressly agreed to pay for all damages to fixtures, furniture and property, and to give thirty days' "legal notice to the manager before vacating the premises." After vacating the premises on July 31, 1978, plaintiffs demanded return of their security deposit. Defendant refused. Plaintiffs then brought this small claims action to recover the $185 deposit.

In his answer, the defendant, in addition to specifically denying the allegations of plaintiffs' complaint, interposed two counterclaims. The defendant in his first counterclaim alleged $250 in damages, claiming that plaintiffs had damaged the kitchen stove and left the apartment in a filthy and dirty condition. In the second counterclaim, it was alleged that plaintiffs had failed to give the required thirty-day notice of termination, and thus were liable for the sum of $1,504, as and for the balance of the rent to the end of the term of the lease. These counterclaims were dismissed by the trial court,

and judgment was accordingly entered in favor of plaintiffs in the sum of $185 plus costs.

We believe the following issues to be dispositive of this appeal:

1. In an action to recover a security deposit, does the lessee have the burden of proving, by a preponderance of the evidence, that there were no damages to the demised premises?

2. Was the trial court's finding that there were no damages to defendant's apartment contrary to the great weight and clear preponderance of the evidence?

3. Did the plaintiffs-lessees give thirty days' legal notice to the manager before vacating the premises?

Further facts will be incorporated in the opinion as necessary.

## I. BURDEN OF PROOF

Plaintiffs' complaint, which was drafted on a standard small claims form, provided as follows:

"On or about the 22 of March, 1978, entered into an agreement to rent an apartment at 1343 W. Wisconsin Ave., paid a security deposit of $185.00. Moved on July 31, 1978 and ask for the security deposit back and was refused. *There was no damages.*" [Emphasis added.]

Defendant argues on appeal that plaintiffs have the burden of proving the allegations of their complaint inasmuch as they alleged that no damage was done. Defendant apparently relies upon the general rule which places the burden of proving a fact on the party who pleads that fact. Thus, defendant claims that the plaintiffs had the burden of proving that the premises were not damaged. We believe this contention to be without merit for a number of reasons.

First, adoption of the rule espoused by the defendant would require lessees to prove a negative proposition by a

preponderance of the evidence. In effect, tenants would be required to prove that each and every fixture, item of furniture and appliance was, at the termination of a lease, in the same condition it was in at the inception of the lease. Failure to so prove would frequently result in a windfall to the lessor, and operate to encourage landlords to retain security deposits where there is no basis for doing so.

Second, the assertion in plaintiffs' complaint that there were no damages was only offered as an explanation for plaintiffs' right to recover the deposit. In an action to recover a security deposit, the essential elements of the lessee's claim are that a deposit was in fact made, and that the lessor has refused to return it. The absence of damages is not an element of the lessee's cause of action. It is for the lessor, either as an affirmative defense or a counterclaim, to allege and prove the lease is terminated, to prove the condition of the premises at the commencement and termination of the term, to prove the extent of damage to the premises and to prove the cost of restoring the demised premises. *See* 49 Am. Jur.2d *Landlord & Tenant* §978 at 950 (1970); 51 C.J.S. *Landlord & Tenant* §416 at 1060–1 (1968). This claim is implicit in every case where a deposit is withheld, unless, of course, the lessor admits he is not entitled to the deposit. This is, in fact, what occurred in the instant case. Defendant raised the issue of damages in his counterclaim, and was thus required to prove this fact by a preponderance of the evidence.

Third, we believe that in such cases the burden should rest on the party with more readily accessible knowledge about the fact in question. It is the lessor who is best able to prove that a tenant damaged property during his tenancy. It is the lessor, not the lessee, who has control of the property, conducts an inspection both at the beginning and end of a tenancy, and maintains records as

to the condition of an apartment at the commencement of a lease. In sum, the burden is on the lessor to prove up his damages. *See State v. McFarren*, 62 Wis.2d 492, 499–503, 215 N.W.2d 459, 463–66 (1974).

In view of the foregoing, we hold that the defendant-lessor had the burden of proving, by a preponderance of the evidence, both the fact and the amount of any damage to his property.

## II.   TRIAL COURT'S FINDINGS

In a trial to the court, the trial judge found that defendant had failed to carry his burden with respect to the fact, amount and cause of any damages. Defendant challenges this finding, partly on the basis of his erroneous view as to who had the burden of persuasion, and claims that the trial court had no choice but to find for him on these issues.

On appeal, findings of fact by the trial court will not be upset unless they are clearly erroneous and against the great weight and clear preponderance of the evidence. *Bank of Sun Prairie v. Opstein*, 86 Wis.2d 669, 676, 273 N.W.2d 279, 282 (1979). In this case, the findings of the trial court are based upon conflicting testimony. "When such a situation is presented, the test on appeal is whether a judicial mind could, on due consideration of the evidence as a whole, reasonably have reached the same conclusions, . . . ." *In re Estate of Glass*, 85 Wis.2d 126, 134, 270 N.W.2d 386, 390 (1978). The trial court is the ultimate arbiter of the credibility of witnesses and a reviewing court will accept the inference drawn by the trier of fact. *Sun Prairie, supra* at 676, 273 N.W.2d at 282.

We believe the trial court's findings to be clearly supported by the evidence.

Defendant alleged plaintiff had damaged the stove beyond repair, requiring its replacement. Galinda testified that he had never used the oven, but had occasionally cooked on the stove top. He also stated that plaintiffs had cleaned the apartment before moving and that, Gary Kruckenburg, an employee of the defendant who had accepted rental payments from plaintiffs on at least one occasion, had told Galinda that the premises were in satisfactory condition, and he would get his security deposit in a few days. The checkout form dated July 31, 1978, and signed by both Galinda and Kruckenburg, however, indicated that the bedroom was "bad," the oven was "very bad," and the cupboards and windows were "dirty." Galinda could not explain this inconsistency other than by stating that it was contrary to Kruckenburg's earlier statements to him, and that the form had been a blank when he [Galinda] had signed it.

Oralia Lombrana, an acquaintance of the plaintiffs, testified that the plaintiffs generally ate out and had never used the oven. Mrs. Lombrana stated that she had assisted plaintiffs in moving out and that the stove on this date was in better condition than it had been when they had moved in, and that the refrigerator was clean and operating in its normal fashion. She also testified that the cupboards and windows were clean.

Garnett Croston, defendant's bookkeeper, testified that several maintenance employees were paid between $200 and $250 to clean and refurbish the apartment. No receipts were introduced, however, to show when that work had been performed. She also admitted that she had no first-hand knowledge as to the condition of plaintiffs' vacated apartment. Moreover, there was no testimony as to the cost of the new refrigerator and stove allegedly installed on July 31, 1978. Finally, Ms. Croston testified that the apartment had been cleaned and refurbished in a single day.

Windolph Trahan, the building manager, testified that the top of the stove was broken, the coils in the refrigerator were punctured, and that the apartment was filthy and full of garbage. According to Trahan, a new stove and refrigerator were installed and the premises were cleaned, mopped, vacuumed and painted. This work was apparently done in the course of a day and a half.

Finally, a checkout form dated August 18, 1978, and signed by Trahan, was introduced into evidence and generally corroborated Trahan's testimony as to the condition of the premises. Although Ms. Croston testified that this form actually referred to the condition on July 31, 1978, Trahan did not testify on this point. An undated index card was attached to the form and indicated that the premises had been cleaned prior to rerenting.

On the basis of the above testimony and documentary evidence, we hold that the trial court was correct when it ruled that defendant had not met his burden of proving the fact, amount and cause of damages to his premises. As was noted by the trial court, Ms. Croston, who had no actual knowledge of the condition of the apartment, failed to testify with any specificity as to the amount and type of damages. There was no evidence as to the value of the allegedly damaged stove and refrigerator. Nor was there any specific evidence as to the cost of cleaning and painting the premises. Thus, the trial court held that even if the premises were damaged as claimed by the defendant, no basis existed for awarding monetary damages.

The trial court also found a failure of proof with respect to the fact and cause of any alleged damages. The trial judge deemed it incredible that defendant could clean, paint and refurbish the premises and find a new tenant in slightly more than a day. The checkout form dated August 18, 1978, was found by the trial court to

be ambiguous. Specifically, defendant failed to establish that the form referred to the apartment's condition as of July 31, and not August 18. Nor was there any explanation as to why a second checkout form was needed. Although Trahan testified as to certain damages, his testimony was countered by that of Luis Galinda and Oralia Lombrana. The trial court, stating that it did not "know where the truth [was] in that regard," correctly ruled that the defendant had failed to carry his burden of proof. The trial court, then, properly dismissed defendant's first counterclaim. Based on the foregoing, we are convinced that the court's findings were not against the great weight and clear preponderance of the evidence.

Counsel for the defendant-appellant also contends that the trial court abused its discretion in questioning witnesses and claims the court improperly prevented the presentation of evidence. We find no evidence that this is correct. The plaintiff's difficulty with the English language required the trial judge to occasionally request clarification of questions and answers. Defendant is also critical of the trial court's tone of voice at the time he examined witnesses on the stand. We are unable to rule on this objection in the absence of a recording of the judge's voice or a clear record of misconduct.

Misconduct of a trial judge must find its proof in the record. The cold record on appeal fails to record the impressions received by those present in the courtroom. Facial expression, tonal quality, stares, smiles, sneers, raised eyebrows, which convey meaning and perhaps have more power than words to transmit a general attitude of mind are lost when testimony is put in writing. Facial expressions and gestures of a judge cannot appear in a record on appeal unless the trial lawyer makes them part of the record in some way. Like alleged errors, counsel should, when objectionable expressions and gestures occur, ask to make a record thereof and take exception to the tone, facial expression and gesture, give a

proper description thereof, and perhaps move if serious for a mistrial. *Breunig v. American Family Ins. Co.*, 45 Wis.2d 536, 548, 173 N.W.2d 619, 626–7 (1970) ; *see also Carlson v. Drews of Hales Corners, Inc.*, 48 Wis.2d 408, 419, 180 N.W.2d 546, 552 (1970).

This court will not speculate on appeal when we do not know what occurred in the trial court. We find the court's conduct to be impartial, and not that of a prejudiced advocate.

## III. NOTICE

The last issue raised by defendants is whether the plaintiffs-lessees served a thirty-day notice of termination of tenancy upon the manager before vacating the premises. As indicated above, defendant has counterclaimed for the sum of $1,504, which represents the balance of the rent to the end of the lease. This is predicated on defendant's claim that plaintiffs never gave the required notice of intention to terminate the lease prior to the end of the year as required by a clause in the application for tenancy.

At trial, plaintiff Galinda testified that at the time he paid the rent for July, 1978, he gave notice that the apartment would be vacated on July 31, 1978. The notice was given to the individual who received the rent. The receipt for the rent was signed by John McHugh. Plaintiff Galinda also testified that after being told plaintiffs were vacating their apartment, Mr. McHugh asked Mr. Galinda to sign what was referred to as a notice of termination of tenancy. Mr. Galinda signed the paper although he could not read English and was relying on Mr. McHugh's representation. Defendant alleges that the notice was ineffective because it was not given to the manager, Mr. Trahan.

The trial court found that legal notice was given pursuant to sec. 704.21(5), Stats.[1] The court also noted that according to principles of agency, Mr. McHugh was an agent of the owner and a proper recipient of the required notice of termination of tenancy. The trial court then dismissed defendant's second counterclaim.

We agree with the action of the trial court. While Mr. McHugh may not have been the manager of the apartment complex, he had the apparent authority of a manager in respect to plaintiff Galinda. The plaintiff testified that rent was received by four persons during the time he lived in the apartment, as evidenced by their signatures on rent receipts introduced into evidence. Given plaintiff's unfamiliarity with the English language, and his lack of familiarity with internal policies of the apartment complex management, it is not inconceivable that he would assume that any person who received rent could also receive notice of termination of tenancy. Nor was there ever any objection by the principal, *i.e.*, the defendant Eisenberg, to payment of rent to any individual other than the manager Trahan.

It is well settled that a principal will be liable for an agent's actions where that agent has apparent authority because of actions of the principal which mislead a third party into reasonably believing the agent has the authority he seems to possess. *Carlson v. Taylor*, 41 Wis.2d 685, 694, 165 N.W.2d 178, 183 (1969). The requirements of apparent agency are:

1. Acts by the agent or principal justifying belief in the agency.

---

[1] (5) Effect of actual receipt of notice. If notice is not properly given by one of the methods specified in this section, but is actually received by the other party, the notice is deemed to be properly given; but the burden is upon the party alleging actual receipt to prove the fact by clear and convincing evidence.

2. Knowledge of the above by the party sought to be charged.

3. Reasonable reliance by a third party.

*Smith v. Osborn,* 66 Wis.2d 264, 278, 223 N.W.2d 913, 920 (1974). *See also Everlite Mfg. Co. v. Grand Valley M. & T. Co.,* 44 Wis.2d 404, 412, 171 N.W.2d 188, 192 (1969). Thus, where a third person reasonably believes that an agent has authority to act in a particular transaction, the principal is bound by the acts of the agent within the scope of apparent authority. *Hollingsworth v. American Finance Corp.,* 86 Wis.2d 172, 181, 271 N.W.2d 872, 877 (1978); *ABC Outdoor Advt., Inc. v. Dolhun's Mar. Inc.,* 38 Wis.2d 457, 461, 157 N.W.2d 680, 682 (1968).

It is undisputed in this case that all negotiations subsequent to the signing of the lease were not conducted through the manager. Testimony showed that it was the practice of several individuals to accept rent and disburse receipts for monies received. Defendant never objected and cannot now disclaim responsibility for the acts of his agents in receiving rents or notices of termination.

This court is therefore of the opinion that proper notice was given, and defendant's second counterclaim is hereby denied.

*By the Court.*—Judgment affirmed.